MICHELLE T., a minor, by Gary C. SUMPTER, her guardian ad litem, Plaintiffs-Respondents,

v.

Cecil CROZIER, Defendant-Appellant.

Supreme Court

*No. 91-0054. Submitted on briefs October 8, 1992.—Decided February 18, 1993.*

(Also reported in 495 N.W.2d 327.)

For the defendant-appellant there was a brief (in the court of appeals) by *Stephen M. Chandler,* New Berlin.

For the plaintiffs-respondents there was a brief (in the court of appeals) by *Gary C. Sumpter* and *Anderson, Sumpter & Anderson, S.C.,* Kenosha.

HEFFERNAN, CHIEF JUSTICE.   This is an appeal on certification from the court of appeals from a judgment of the circuit court for Kenosha County, Barbara A. Kluka, Judge, which awarded damages to Michelle T., a minor, for injuries resulting from Cecil Crozier's sexual assault upon her.

In the course of the trial, Judge Kluka precluded defendant Crozier's offer of evidence that he had not assaulted Michelle T., because Judge Kluka found that issue had been litigated and decided adversely to Crozier in a prior criminal trial arising out of the same incident which resulted in a verdict finding him guilty of second degree sexual assault.

The court of appeals certified this case because it concluded that there was considerable doubt in Wiscon-

sin whether collateral estoppel was an accepted trial technique when used by a plaintiff to exclude an offer of evidence by a defendant. We granted certification to clarify the status of Wisconsin law on the use of offensive estoppel. We conclude that, under the facts of the instant case, the granting of Michelle T.'s request for the use of offensive collateral estoppel was in accordance with Wisconsin law, was fundamentally fair, and we therefore affirm the decision of the circuit court. [1]

In 1987, a twelve-member jury convicted Crozier of second degree sexual assault for two acts of sexual touching of Michelle T. After Crozier's criminal conviction, Michelle T.'s guardian ad litem commenced a civil action for damages charging Crozier with assault and battery, and extreme and outrageous conduct intending to inflict emotional distress. In the course of the opening statement in the civil proceeding, counsel for Crozier told the jury that Crozier would testify to dispute the facts that supported the criminal conviction. In response, Michelle T. made a motion *in limine* requesting that under the rationale of *Crowall v. Heritage Mutual Insurance,* 118 Wis. 2d 120, 346 N.W.2d 327 (Ct. App. 1984), Crozier be collaterally estopped from testifying on that issue contrary to the verdict rendered in the prior criminal prosecution.

The circuit court granted Michelle T.'s motion on two grounds. First, the court rejected Crozier's argument

---

[1] Offensive collateral estoppel occurs when the plaintiff seeks to foreclose a defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. Defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim that the plaintiff has previously litigated and lost against another defendant. Ryan, *Collateral estoppel in the Wisconsin Courts,* Wis. B. Bull. January 1982 p. 32 [hereinafter *Wisconsin Courts*].

that collateral estoppel is functionally analogous to a motion for partial summary judgment on the question of liability and that therefore Michelle T.'s motion had not been timely filed. Collateral estoppel, the court pointed out, is a legal theory that may be raised at any point in the trial to prevent the relitigation of particular issues that were "essential to the judgment," not entire claims.[2] Accordingly, the court reasoned that, although Crozier would be precluded from disputing the elements of the crime for which he had been convicted, namely, that he had sexual contact with the minor Michelle T. for the purpose of sexual arousal or gratification, he could still contest the question of liability for damages. Crozier might introduce testimony refuting the particular elements required for intentional infliction of emotional distress, such as the intent to cause emotional distress or effect of the sexual touching.[3] Similarly, evidence that Michelle T. had consented to the touching would defeat the *civil* battery charge brought against Crozier.[4]

---

[2] *Heggy v. Grutzner,* 156 Wis. 2d 186, 195, 456 N.W.2d 845 (Ct. App. 1990) ("[a]n issue on which relitigation is foreclosed may be one of evidentiary fact, of 'ultimate fact' . . . or of law.") (*quoting Restatement (Second) of Judgments* sec. 27 comment c, at 253 (1980). *See also In Interest of T.M.S.,* 152 Wis. 2d 345, 354, 448 N.W.2d 282 (Ct. App. 1989).

[3] The elements of intentional infliction of emotional distress include:

  (1)  the conduct was intended to cause emotional distress;

  (2)  the conduct was extreme and outrageous;

  (3)  the conduct caused the victim's emotional distress; and

  (4)  the emotional distress was extreme and disabling.

*Wisconsin Jury Instructions—Civil,* 2725 Intentional Infliction of Emotional Distress (1991).

[4] The elements of civil battery include:

Second, the court reasoned that permitting the use of offensive collateral estoppel would not unduly prejudice Crozier because he had already litigated the issue of sexual touching in the criminal court under a more stringent (beyond a reasonable doubt) standard of proof than is required in civil proceedings. Further, the circuit court stated, Crozier had been found guilty by a twelve-member jury in criminal court and therefore was not denied his right to a jury trial as conferred by the federal and state constitutions.

On appeal, the court of appeals recognized the need for a definitive statement regarding the use of offensive collateral estoppel and therefore certified this case to this court. In its certification, the court of appeals noted that Wisconsin courts have developed a fundamental fairness standard for deciding whether to permit the invocation of collateral estoppel. Specifically, the court cited *McCourt v. Algiers,* 4 Wis. 2d 607, 91 N.W.2d 194 (1958), and *Crowall v. Heritage Mutual Insurance,* as possible precedent for upholding the use of offensive collateral estoppel in Wisconsin.

Whether Wisconsin courts may permit the use of offensive collateral estoppel is a question of law we interpret without deference to the lower court's ruling. *Heggy v. Grutzner,* 156 Wis. 2d 186, 192, 456 N.W.2d 845 (Ct. App. 1990). Because we agree that the decisions cited in the certification sanction the use of offensive collateral estoppel, we affirm the judgment of the circuit court.

(1) the unlawful use of force or violence upon another;

(2) the intentional direction of such force or violence at the person of another; and

(3) the sustaining of bodily harm by the person against whom such force or violence is directed.

*Wisconsin Jury Instructions—Civil,* 2005 Battery (1990).

Collateral estoppel, or issue preclusion, is a doctrine designed to limit the relitigation of issues that have been contested in a previous action between the same or different parties. *Lawlor v. National Screen Service Corp.,* 349 U.S. 322 (1955).[5]    Attempts to invoke collateral estoppel, however, have historically been conditioned by requirements designed to protect against unfairly disadvantaging parties. For example, collateral estoppel initially was permitted only if the parties were mutually bound by the first court's judgment. 31 A.L.R.3d 1044, sec. 1(b) at 1047–49 (1970),[6] i.e., both parties must have been parties to the prior trial and both bound by the judgment therein. Similarly, courts generally required that the issues sought to be precluded must have been pleaded properly and submitted for determination in the first trial. Thus, judgments based on pleas of guilty or *nolo contendere,* both of which pass directly to sentencing and avoid adjudication of contested issues, it is argued, could not be used to preclude future litigation of those same issues. *Restatement (Second) of Judgments,* sec. 85, comment b at 296; *Crowall,*  118 Wis. 2d at 122 n.2.[7] Formalistic requirements, however, have gradually

---

[5] *See also Restatement (Second) of Judgments* sec. 27; *Wisconsin Courts,* Wis. B. Bull January 1982 at 45.

[6] For an account of the rise and fall of the mutuality requirement see *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 320–27 (1971); *McCourt v. Algiers,* 4 Wis. 2d at 612–13. *See also Wisconsin Courts,* Wis. B. Bull. January 1992 at 32; Note, *Invoking Collateral Estoppel Offensively: The Ends of Justice . . . or the End of Justice?* 4 Am. J. Trial Advoc. 75, 79–82 (1980) [hereinafter *Invoking Collateral Estoppel*].

[7] While we do not decide the preclusionary effect had Crozier pleaded guilty or *nolo contendere*  we point out that the *Restatement (Second) of Judgments* recites that:

been abandoned in favor of a looser, equities-based interpretation of the doctrine. Jonathan Thau, *Collateral Estoppel and the Reliability of Criminal Determinations: Theoretical, Practical, and Strategic Implications for Criminal and Civil Litigation,* 70 Geo. L.J. 1079 n.2 (1982) (citing cases) [hereinafter *Strategic Implications*]; *Wisconsin courts,* Wis. B. Bull. January 1982 at 32.[8]

Today, federal and state courts balance competing goals of judicial efficiency and finality, protection against repetitious or harassing litigation, and the right to litigate one's claims before a jury when deciding whether to permit parties to collaterally estop one another.[9] Courts may consider some or all of the follow-

> The rule of this Section presupposes that the issue in question was actually litigated in the criminal prosecution . . .. Accordingly the rule of this Section does not apply where the criminal judgment was based on a plea of *nolo contendere* or a plea of guilty. A plea of *nolo contendere* by definition obviates actual adjudication and under prevailing interpretation is not an admission. A defendant who pleads guilty may be held to be estopped in subsequent civil litigation from contesting facts representing the elements of the offense.

*Restatement (Second) of Judgments,* Sec. 85, comment b at 296. We note that the court of appeals in *Crowall,* 118 Wis. 2d at 122 n.2, states that "[a] plea of guilty or nolo contendere in the criminal suit does not draw any issues into controversy and does not support the use of collateral estoppel." We are not confronted with this problem in this case. Accordingly, we do not by relying generally on the principle holding of *Crowall* give our imprimatur to the dicta set forth in that footnote.

[8] Tracing the development of the doctrine of collateral estoppel, Mr. Thau concludes that "[i]n the past two decades . . . a rapidly growing number of courts have given collateral estoppel effect to criminal convictions in related civil suits." *Strategic Implications,* 70 Geo. L.J. at 1079.

[9] *Restatement (Second) of Judgments,* Title E: Issue Preclusion at 249–50. The authors of the Restatement go on to note that "the rules of issue preclusion are of less significance under a

ing factors to protect the rights of all parties to a full and fair adjudication of all issues involved in the action: (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?[10]

Federal case law illustrates the evolution of this "fundamental fairness" standard. Prior to 1979, the United States Supreme Court applied collateral estoppel only on behalf of defendants. Whereas defensively the doctrine was believed to encourage joinder of parties and promote judicial efficiency, offensive collateral estoppel was feared as unduly prejudicing the party against whom it was asserted. *Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois Foundation,* 402 U. S. 313 (1971). In *Blonder-Tongue,* the Court noted that the rule of mutuality had been discarded as a requirement for applying collateral estoppel. *Id.* at 326. Nevertheless, the Court went on to discuss other factors that must be considered in deciding whether to permit parties to collaterally estop one another. Citing the misallocation of resources

procedural system that compels the assertion of some counterclaims and permits the assertion of all others . . . ."

[10] *Restatement (Second) of Judgments,* "Exceptions to the General Rule of Issue Preclusion" sec. 28 at 273–74.

that attends the relitigation of settled issues, the Court reasoned that "no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas. In the end, decision will necessarily rest on the trial courts' sense of justice and equity." *Id.* at 333–34. In the case of patent litigation at issue in *Blonder-Tongue,* the Court reasoned in part that both the immense cost of litigating patent disputes and the chilling effect that cost would have on potential defendants supported the use of collateral estoppel. *Id.* at 338.

Nine years later, the Court, in *Parklane Hosiery Co., Inc., et al. v. Shore,* 439 U.S. 322 (1979), extended the scope of collateral estoppel to cases in which it was used offensively by plaintiffs to preclude defendants from relitigating issues that had been lost in prior actions. In so holding, the Court acknowledged that the use of offensive collateral estoppel neither promoted judicial economies as does its defensive use nor ensured that defendants would not be prejudiced if they had little incentive to defend themselves vigorously in the first suit. *Id.* at 329–30. Despite these limitations, however, the Court concluded that "the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied." *Id.* at 331. If the defendant would be unduly prejudiced or the plaintiff failed to join otherwise easily joined parties the trial court should deny the use of offensive collateral estoppel. *Id.*

The development of the doctrine of collateral estoppel in Wisconsin was similar to that in the federal courts. With the demise of the requirement of mutuality, the Wisconsin courts adopted a more flexible approach toward the application of collateral estoppel. In *McCourt*

*v. Algiers,* this court held that a federal court's alloca-
tion of negligence between two auto insurers precluded
the losing party's insured from relitigating the question
of liability in a state court action for damages between
the two insureds. *McCourt,* 4 Wis. 2d at 610.[11] Distin-
guishing the case from those in which both parties were
involved in each of the two proceedings, the court rea-
soned that "the doctrine of *res judicata* is based on the
proposition that repeated litigation of identical issues is
undesirable where not necessary to prevent unfairness."
*Id.* at 611. An exception to the rule of mutuality existed,
nonetheless, "where the party against whom the plea is
raised was a party to the prior action and 'had full oppor-
tunity to litigate the issue of its responsibility.' " *Id.* at
613 (quoting *Good Health Dairy Products Corp. v.
Emery,* 275 N.Y. 14, 18–19, 9 N.E.2d 758 (1937)).

The Wisconsin court's concern about the litigants'
opportunity to fully and fairly pursue adjudication on all
issues is well illustrated not only by *McCourt,* but by
later rulings where there were attempts to collaterally
estop parties in civil actions by factual determinations
made in prior criminal prosecutions. In *State ex rel.
Flowers v. Department of Health & Social Services,* 81
Wis. 2d 376, 260 N.W.2d 727 (1978), the defendant in a
parole revocation proceeding had been acquitted of crim-
inal conduct but the same factual incident was used by
the Department as proof in the revocation proceedings.
The defendant sought to estop the Department by his
claim that the state had failed in its proof at the criminal

---

[11] In the prior federal district court litigation, McCourt was
not a party, but her insurer was. The district court proceedings
found that McCourt's insurer was free of liability because its
insured, McCourt, was not negligent. Algiers, the defendant in the
state case, was impleaded in the district court case, and he and his
insurer were found to be liable for negligence.

prosecution and therefore was precluded from attempting once again to prove the same facts. This court pointed out, however, that the burden on the state in the criminal proceeding was beyond a reasonable doubt, while in the revocation proceeding, there was a lesser burden—a preponderance of evidence. Hence, the state's failure to establish the necessary elements of a crime did not necessarily demonstrate that it could not meet the lesser burden required in the second proceeding. Estoppel was denied.

In *Crowall v. Heritage Mutual,* this rationale was well summarized when the court of appeals stated;

> In the criminal proceeding, the jury was held to the highest burden of proof in finding Crowall guilty beyond a reasonable doubt as compared to the lower burden in the instant action . . .. [W]e are proceeding from a higher burden of proof to a lower one. We recognize it would be inappropriate to apply collateral estoppel if the burden of proof were lesser in the first action than the second.

*Crowall,* 118 Wis. 2d at 126 n.5.

In *Crowall,* set forth above, the party against whom preclusion by collateral estoppel was asserted had been found guilty of drunk driving in the criminal case. When he attempted to collect from his own insurer for injuries, his insurer, relying on noncoverage for owner-drivers, asserted that Crowall was estopped from litigating anew the question of whether he was the driver. Thus, permitting collateral estoppel to be applied in *Crowall* did not present the same threat to the litigants' right to full and fair adjudication as had the situation in *Flowers. Crowall,* 118 Wis. 2d at 126 n.5. Citing *Blonder-Tongue,* the court summarized its position, stating that "[a] major consideration . . . is fairness to the party against

whom collateral estoppel is asserted. . . . The analysis should be made on a case-by-case basis with the court looking at the actions taken to defend the case and not at the potential penalties." *Id.* at 126.

Crozier contends that, while these cases indicate a willingness by Wisconsin courts to permit the defensive use of collateral estoppel from criminal to civil actions, the courts have yet to extend their holdings to the offensive use of collateral estoppel. Quoting *Crowall,* Crozier argues that the "lack of mutuality of parties does not preclude the use of collateral estoppel when it is asserted defensively to prevent a party for [sic] relitigating an issue which has been conclusively resolved against that party in a prior case." *Id.* at 122. Crozier also suggests that the facts of the case further support such an interpretation of existing state law. The defendant in *Crowall* was convicted of drunk driving and later estopped from contending that he was not the driver in an action for damages brought against his insurer.

While it is true that the *Crowall* court limited the specific holding of the case to the defensive use of collateral estoppel, the reasoning of the court was not so circumscribed. The portion of the opinion discussing mutuality requirements on which Crozier relies is itself imbedded in the *Crowall* court's broader discussion of collateral estoppel. In fact, it was just after its discussion regarding mutuality and the defensive use of collateral estoppel that the court made clear that the primary factor in deciding whether to apply collateral estoppel is "fairness to the party against whom [it] is asserted." *Crowall,* 118 Wis. 2d at 126. As noted earlier, the *Crowall* court intended that this question of "fundamental fairness" be made on a case-by-case basis. *Id.*

Neither Crozier nor Michelle T. rely on *McCourt,* which we consider to be determinative. The court of

appeals questioned the significance of *McCourt* because the *McCourt* court used the term *res judicata,* not collateral estoppel. However, as the Supreme Court noted in *Lawlor,* "[t]he term *res judicata* is used broadly in the Restatement to cover merger, bar, collateral estoppel, and direct estoppel." *Lawlor,* 349 U.S. at 326 n.6 (citing *Restatement, Judgments,* c.3, Introductory Note). The *Crowall* court also noted that the parties in the case used the terms "collateral estoppel and res judicata" interchangeably but noted that "[c]ourts in the past have often contributed to the confusion between these two doctrines." *Crowall,* 118 Wis. 2d at 121 n.1.[12] The dispute in *McCourt* clearly involved issue preclusion, not claim preclusion.[13] The court of appeals noted in its petition for certification that treatises and federal court decisions alike support this reading of *McCourt.* The

---

[12] *See, e.g., Rauser v. Rauser,* 52 Wis. 2d 665, 671, 190 N.W.2d 875 (1971), in which this court wrote that:

> It is clear that a plaintiff is barred from litigating, in this action, the issues which were litigated or which might have been litigated in the Nevada probate court. . . . Consequently, plaintiff in this case is precluded by res judicata from asserting her claim of conspiracy against the coexecutors. That issue was litigated in Nevada and cannot be raised now.

[13] We accept, as did the court of appeals in *Crowall,* the definitions utilized by the United States Supreme Court in *Lawlor v. National Screen:*

> [U]nder the doctrine of *res judicata,* a judgment "on the merits" in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit. *Lawlor,* 349 U.S. at 326.

It is clear that McCourt used the term "res judicata" to encompass estoppel. *See Lawlor,* 349 U.S. at 326 n.6.

Annotation to the A.L.R., 31 A.L.R.3d 1044, 1073–74, 1088 (1970), cites *McCourt* for the proposition that Wisconsin permits offensive collateral estoppel as do both *Gorski v. Commercial Ins. Co.*, 206 F. Supp. 11, 12 (D.C. Wis. 1962), and *Dannhausen v. First Nat'l Bank,* 538 F. Supp. 551, 567 (E.D. Wis. 1982). Accordingly, we expressly agree with the generally accepted interpretation of *McCourt* as standing for the proposition that Wisconsin permits the use of offensive collateral estoppel. We specifically interpret *McCourt* as so holding from the date of its issuance.

Crozier next argues that, irrespective of the general rule regarding the use of offensive collateral estoppel, its application in the instant case was unduly prejudicial and should not have been permitted. In support of this contention, Crozier lists a number of perceived prejudicial effects from the ruling of the circuit court. First, he claims that, because of the uncertain state of the law surrounding the application of collateral estoppel, he was without adequate notice of the likelihood of Michelle T.'s motion. In consequence of this uncertainty, Crozier contends that he was not cognizant of the future risks from pleading not guilty at his criminal trial. According to Crozier, he could have pleaded *nolo contendere* to the criminal charges had he known of Michelle T.'s ability to collaterally estop him during the subsequent civil action.[14] In addition, Crozier asserts that he was prejudiced because the court granted Michelle T.'s motion for collateral estoppel after he had already told the jury in his opening statement he would offer testimony disputing the basis of his previous conviction.

[14] We do not in this opinion address the hypothetical situation that would result from a plea of *nolo contendere. See supra* note 7 and accompanying text.

We are not persuaded by Crozier's attempts to characterize the decision of the circuit court as prejudicial. The fact is that Crozier was legally estopped from asserting in the civil case those issues that were fully litigated in the prior criminal case. Moreover, we find it difficult to understand how Crozier could have been any more motivated to fully and vigorously litigate the initial determination than when confronting the possibility of incarceration for second degree sexual assault. In *Crowall,* this court reasoned that no evidence existed to suggest that the defendant had "not fully use[d] his opportunity to litigate the question [before the court]." *Crowall,* 118 Wis. 2d at 126. Similarly, we are unpersuaded by Crozier's argument that he did not have the opportunity to fully litigate the question of criminal liability. At the criminal trial, Crozier was represented by an attorney, presented witnesses and cross-examined state witnesses. The fact that he chose not to testify on his own behalf is insufficient proof of a failure to litigate the matter. We decline to speculate why Crozier passed up his opportunity to testify at his criminal trial. We conclude, however, that he did so willingly and wittingly to gain whatever advantage that decision might have provided at the time. We further point out that the proof of the assault in the prior criminal case was beyond a reasonable doubt, while the proof required in the civil case was the lower burden.

Furthermore, the uninterrupted liberalization of the doctrine of collateral estoppel was neither unforeseen nor unannounced, and for that reason we apply the doctrine in its offensive use to this case. As noted earlier, *McCourt v. Algiers* has been cited since 1962 for the proposition that Wisconsin recognizes the use of offensive collateral estoppel, and federal courts interpreting Wisconsin law have granted motions to implement that

theory. In view of the extensive literature on the state of the law in Wisconsin, we can conclude that the result here was clearly foreseeable. In addition, numerous commentators forecast and discussed the Wisconsin courts' movement toward this eventuality. Crozier claims, however, not to have been aware of the risk of being collaterally estopped. To the contrary, we believe that Michelle T.'s failure to move for collateral estoppel at the beginning of trial indicates the extent to which litigating parties in Wisconsin have come to expect the courts to estop defendants from disputing issues already resolved in an earlier proceeding. A reasonable attorney representing a defendant would not expect that opposing counsel would need to relitigate an issue previously decided in plaintiff's favor.

Because *McCourt* heralded this state's acceptance of the offensive use of collateral estoppel, we conclude that Crozier's claims of undue prejudice were not meritorious. Moreover, we conclude that the trial judge correctly exercised her discretion in determining that the use of the doctrine of offensive estoppel was, under the circumstances, appropriate and not fundamentally unfair. Our holding today is intended only to make explicit that which was already clearly inferable from prior case law—that Wisconsin courts recognize the offensive use of collateral estoppel.

We find Crozier's assertion that the use of offensive collateral estoppel violated his constitutional right to a jury trial equally unpersuasive. The United States Supreme Court dismissed this same contention in its *Parklane Hosiery* decision. Discussing the historical development of the seventh amendment right to a jury trial, the Court held that parties are entitled to but one jury determination on questions of fact. *Parklane Hosiery,* 439 U.S. If parties against whom collateral

estoppel is asserted have already litigated the disputed questions of fact before a jury, the constitutional requirements have been satisfied.

In the instant case, a twelve-member jury convicted Crozier of second degree sexual touching. In so holding, the jury had to have determined that Crozier sexually touched the minor Michelle T. for the purpose of sexual gratification. On these issues, Crozier's constitutional guarantee to a jury was satisfied. As for the additional issues forming the basis of Michelle T.'s civil action,[15] the circuit court permitted Crozier to submit evidence on his behalf before the second jury. We conclude that Crozier was not denied the right to a jury trial on any of the factual issues involved in either the criminal or civil claims.

In summary then, we conclude, in accordance with previous holdings of this court and precedential opinions of the court of appeals, that the doctrine of collateral estoppel may be employed not only defensively to preclude a plaintiff from relitigating an issue decided in prior litigation, but may also be used offensively, as in the instant case, to allow a plaintiff to utilize as an element of the plaintiff's case a fact determined adversely to the defendant in prior litigation. As this court has said in the past, whether the use of prior adjudication is appropriate to preclude an issue for determination in a second forum is dependent upon conformance with principles of fundamental fairness, including such factors as prior opportunity to adequately litigate the particular issue, including an evaluation of the burden of proof. Such determination of fundamental fairness is a matter of discretion to be determined by the trial judge on a case-by-case basis. Because the trial

---

[15] *See supra* notes 3 and 4.

judge correctly applied the law and correctly exercised her discretion, we affirm the judgment of the circuit court.

*By the Court.*—Judgment of the circuit court is affirmed.