**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 3, 2010[*]
Decided August 4, 2010

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 09-3648

|  |  |
|---|---|
| ANTONIO HARRIS, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *Plaintiff-Appellant,* |  |
|  | No. 06-C-1290 |
| *v.* |  |
|  | C. N. Clevert, Jr., |
| KRISTINA KADO,[**] et al., | *Chief Judge.* |
| *Defendants-Appellees.* |  |

**O R D E R**

Police officers in Milwaukee, Wisconsin, arrested Antonio Harris based on, according to them, a violation-of-parole warrant. After the arrest, the officers discovered that Harris possessed crack, and he was convicted in Wisconsin state court of possessing

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

[**] During this litigation, Kado's last name changed to Meuer, but we shall continue to use Kado in this appeal.

cocaine with intent to deliver. *See State v. Harris*, 763 N.W.2d 559 (Wis. Ct. App.) (unpublished opinion), *review denied*, 765 N.W.2d 579 (Wis. 2009). But while the state prosecution was pending, Harris brought this action in federal court under 42 U.S.C. § 1983. He alleged that the two arresting officers had no basis to stop him and that the arrest warrant was fabricated after the fact by his parole officer. The district court granted summary judgment for the defendants, and Harris appeals. We affirm the judgment.

After the case proceeded past screening and discovery, the defendants moved for summary judgment. The police officers submitted a "positive hit sheet" showing that a warrant existed on the day Harris was arrested, and the parole officer explained in an affidavit how that warrant came about. She states that electronic monitoring was a condition of Harris's parole and required a telephone connection to detect when he was at home. Several days before his arrest, the warrant for Harris was issued (without input from the parole officer) after the monitoring system detected that he remained away from home for an entire weekend without permission. Harris later told the parole officer that he had moved and provided her his new address but not his phone number. Therefore, according to the parole officer, she did not cancel the warrant because Harris was still not in compliance, but she did not arrest him while he was in her office because he promised to give her the new information. The day after their last contact, however, Harris encountered the two police officers by chance and was arrested when they discovered the active warrant.

At summary judgment the police officers also argued that their investigation of Harris was lawful, and they included transcripts of their testimony from the state criminal proceedings, setting forth their encounter with Harris. One officer testified that a few weeks before the arrest he was performing community outreach in a high-crime area and learned that one resident was concerned about young men involved with drugs hanging out in front of her family's house. The officer told her that he would increase patrols in the area and would cite people who were loitering on her property. Thus, when he saw Harris and another man in front of the woman's house, he decided to investigate. When the officers approached the two men, Harris took a couple of steps backwards, which raised their suspicions, and they saw that both men were wearing electronic-monitoring bracelets on their ankles. They said that Harris answered their questions nervously and told them he was there to visit someone named Lisa, which the officers knew was not the name of the tenant. A frisk of Harris did not turn up a weapon, but a warrant check revealed the violation-of-parole warrant. A search incident to arrest turned up $111 in Harris's pocket (parolees are not permitted to carry more than $100), and at the police station the officers found that Harris also possessed crack packaged for sale and another $300.

Harris submitted an affidavit in response, attesting that he and his companion were standing in the yard doing nothing wrong when the two police officers jumped from their

car and searched him. One of the officers reached straight into his pants pocket, he says, retrieved $424, and then arrested him for loitering. As he was being handcuffed, a resident came out of the house and told the police that she had been expecting Harris, but still the officers arrested him. Harris avers, without explanation, that the officers did not run a warrant check at the scene. He also asserts in his affidavit that the warrant could not have existed because his parole officer never told him about it or arrested him when he checked in. He did not, however, provide an affidavit or other evidence to contradict the parole officer's proof that the warrant was valid, relying instead on the argument in his brief that she should have canceled the warrant after he provided his new address.

Because Harris did not respond properly to the defendants' proposed findings of fact, the district court deemed those facts undisputed unless they were contradicted by Harris's affidavit. The court concluded that the police officers' initial approach was a consensual police-citizen encounter and that by the time the encounter turned into a stop and frisk, the officers had developed reasonable suspicion. Additionally, the court concluded that Harris did not submit any admissible evidence to refute that the warrant was valid or that the police officers knew about it at the time of the arrest. Finally, the court determined that the parole officer had reason to keep the warrant active when Harris did not provide a phone number.

On appeal Harris asserts that the police officers did not have reasonable suspicion to stop him and continues to insist that the officers were not aware of the warrant before his arrest. Additionally, he maintains that the warrant was fabricated but argues that, even if it was valid, his parole officer acted unreasonably in allowing the warrant to remain active after he gave her the information she requested.

Before we delve into Harris's arguments, however, we must consider the effect his criminal conviction has on the scope of this appeal. Although Harris's criminal case was still pending at the time he filed this lawsuit, he now has been convicted, and that conviction may preclude some of the issues that he now raises. *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007). We give the Wisconsin judgment the same preclusive effect that Wisconsin courts would give it. 28 U.S.C. § 1738; *Allen v. McCurry*, 449 U.S. 90, 96 (1980). And Wisconsin allows defensive collateral estoppel to prevent a plaintiff from relitigating an issue that has already been decided against him in another case. *Michelle T. ex rel. Sumpter v. Crozier*, 495 N.W.2d 327, 332 (Wis. 1993). Courts determine on a case-by-case basis whether collateral estoppel (also known as issue preclusion) is appropriate, looking first to whether the issue was actually litigated and determined in the other suit and then deciding whether preclusion comports with fundamental fairness. *Id.* at 330-33.

Here, Harris moved to suppress the drugs in his criminal trial, calling into question the lawfulness of the initial stop and the validity of the warrant used to arrest him. The trial court heard testimony from both arresting officers and concluded by clear and convincing evidence that they lawfully approached Harris to question him, which then led to reasonable suspicion to stop and frisk him. The trial court found that after the frisk the officers discovered the warrant, which gave them probable cause to arrest and search Harris. Harris appealed this ruling, and the state appellate court upheld the determination. *State v. Harris*, 763 N.W.2d 559 (Wis. Ct. App.) (unpublished opinion), *review denied*, 765 N.W.2d 579 (Wis. 2009). Thus, the same issues raised in this § 1983 suit were raised and decided against Harris in the criminal trial.

Because the issues are the same, we turn to whether equity would allow us to apply issue preclusion here. Looking at the factors Wisconsin uses to analyze fairness, *see Michelle T.*, 495 N.W.2d at 330-31, we conclude that issue preclusion is appropriate. First, Harris had great incentive to fully litigate the matter because a favorable ruling would likely end his criminal case, and he had the opportunity to obtain review of the trial court's ruling. Second, the issues under review are exactly the same and are based on the same law and the same historical facts. Third, the quality of the suppression hearing and this civil suit are the same: Harris has the same opportunity to present evidence in both proceedings. (His decision not to testify at the suppression hearing does not change the analysis. *See id.* at 334.) Fourth, the state had a clear-and-convincing burden of proof at the suppression hearing, and so shifting burdens of proof would not bar preclusion against Harris, who now bears the burden to prove a violation only by a preponderance of the evidence. *See Guenther v. Holmgreen*, 738 F.2d 879, 888 (7th Cir. 1984). And finally, public policy weighs in favor of applying preclusion so as to avoid the risk of inconsistent state and federal judgments.

Accordingly, we conclude that all of Harris's claims are precluded by the adverse findings at his suppression hearing. We acknowledge that issue preclusion is an affirmative defense, *See* FED. R. CIV. P. 8(c)(1), but a court may raise it on its own, *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996), and we find it appropriate to do so here.

AFFIRMED.