In re Jonathan H. HORSFALL, Debtor.

First Weber Group, Inc., Plaintiff,

v.

Jonathan H. Horsfall, Defendant.

Bankruptcy No. 10–12596.
Adversary No. 10–00179.

United States Bankruptcy Court,
W.D. Wisconsin.

March 1, 2011.

Kim Moermond, First Weber Group, Inc., Joel Bruce Winnig, Madison, WI, for Debtor.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge. .

Jonathan Horsfall ("Defendant") filed for relief under chapter 7 on April 5, 2010. On July 9, 2010, First Weber Group, Inc ("First Weber") filed this adversary proceeding to determine the nondischargeability of its claim. First Weber's motion for summary judgment has been heard and is under advisement awaiting this decision.

The Defendant was a real estate agent for First Weber Group from May 4, 2001 until August 29, 2002. Pursuant to his employment contract the Defendant agreed to list and sell properties on First Weber's behalf. The contract expressly stated that all listings were the sole property of First Weber.

First Weber alleges that on February 27, 2002, a seller named Robert Call executed a listing agreement with First Weber. The Defendant acted as the listing agent. On August 6, 2002, an Offer to Purchase in the amount of $160,000 was submitted by interested buyers, but not accepted. In late August, the Defendant terminated Call's listing contract with First Weber. Soon thereafter, the Defendant terminated his employment with First Weber. Approximately one month after leaving First Weber, the Defendant started his own brokerage firm called "Picket Fence, LLC." While working for his new company, the Defendant listed and sold Call's property and the transaction closed on October 28, 2002. The property sold was the same property that was originally listed with First Weber. Call paid the Defendant a $6,000 commission. Had First Weber consummated the sale, it would have received a commission of $9,600.

The Defendant disagrees with most of the above facts. He asserts that in August 2002, First Weber learned that Call was dishonest and unable to provide clean title to his properties. In response, the Defendant was told by a senior official of First Weber to terminate all listings with him. Shortly after, the Defendant left First Weber and started his own company called "Picket Fence, LLC." The Defendant admits selling Robert Call's residential property, and receiving a commission. However, the Defendant denies that he violated any contract.

First Weber brought a suit in Dane County Circuit Court ("state court") against the Defendant in early 2007. It asserted claims for both conversion of its property and tortious interference with a contract. First Weber moved for summary judgment on both claims. However the state court, in a ruling from the bench, granted summary judgment only on the claim for tortious interference with a contract.[1] The court did not specifically address First Weber's allegations of conversion. In its ruling, the state court held that First Weber and a third party had a contractual relationship, which the Defendant interfered with when he sold Call's property; the Defendant's "interference was intentional and a causal connection

---

1. In Wisconsin, to prove a claim for conversion a plaintiff must establish that the defendant: (1) Controlled or took property belonging to another; (2) without the owner's consent; and (3) in a manner that seriously interfered with the owner's rights to possess the property. *Knox Enterprises, Inc. v. Jetzer*, 326 Wis.2d 266, 2010 WL 1881943 (Wis. App.2010). Unlike the claim for tortious in-terference with a contract, where the state court made factual findings on each element of the claim, there is no indication in the state court transcript the claim for conversion was ever considered when the judgment was entered. Although the court stated that Horsfall "converted" property, it made no findings in support of that conclusory statement.

exist[ed] between the interference and the damages" and the "Defendant's interference was not justified or privileged." Having found all required elements, the Defendant was liable for tortious interference with a contract. A judgment was entered against him for roughly $11,000.

First Weber filed this adversary action under 11 U.S.C. § 523(a)(6). It seeks a determination that its claim arose from a "willful and malicious injury." It moves for summary judgment based on the state court judgment, arguing that issue preclusion prevents the Defendant from relitigating the facts and issues determined by the state court and that those facts and issues are the only ones necessary for the relief it seeks in this court.

■ Federal courts must recognize the preclusive effect of previous state court proceedings under the Full Faith and Credit Act. *See Dollie's Playhouse, Inc. v. Nable Excavating, Inc.*, 481 F.3d 998, 1000 (7th Cir.2007) (requiring federal courts to give state court judgments the same preclusive effect as would be given in state court). Where a state court has entered a judgment by litigating the specific issues to be tried, federal courts must give the state court's findings preclusive effect, the issue is deemed beyond dispute and summary judgment is appropriate. *See generally Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Summary judgment must be granted "if ... there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c) (applied to adversary proceedings through FRBP 7056(c)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ In Wisconsin, the application of issue preclusion requires a two-step inquiry—"(1) whether issue preclusion can, as a matter of law, be applied; and (2) whether the application of issue preclusion would be fundamentally fair." *Michelle T. by Sumpter v. Crozier*, 173 Wis.2d 681, 495 N.W.2d 327 (Wis.1993). Under the first step, this court must determine whether "the issue ... was actually litigated and determined in the prior proceeding by a valid judgment in a previous action and whether the determination was essential to the judgment." *Id.* (citing *Town of Delafield v. Winkelman*, 269 Wis.2d 109, 675 N.W.2d 470 (Wis.2004)). Summary judgment "satisfies the requirement of a conclusive and final judgment," and therefore the underlying case is deemed to be "actually litigated" for purposes of issue preclusion. *See Landess v. Schmidt*, 115 Wis.2d 186, 340 N.W.2d 213 (Wis.Ct.App.1983).

■ Under 11 U.S.C. § 523(a)(6), "A discharge ... does not discharge an individual debtor from any debt—for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The U.S. Supreme Court has clarified § 523(a)(6) noting that "nondischargeability takes a deliberate or intentional injury" and "not merely an intentional or deliberate act that leads to an injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The *Geiger* Court noted that injuries caused by intentional torts generally fall within the definition of "willful," because those torts usually require that the actor "intend the consequences" of his or her acts. *Id.* (Congress sought to limit § 523(a)(6) to only "willful and malicious" injuries that were intentionally caused).

■ Although most intentional torts fall within § 523(a)(6), some do not. *See Garoutte v. Damax*, 400 B.R. 208, 213 (Bankr. S.D.Ind.2009). Thus before applying issue preclusion, the bankruptcy court must "compare the tort judgment in question

with the 'willful and malicious' standard." *Id.* The tort judgment at issue here was rendered for tortious interference with a contract. To establish "tortious interference with a contract," Wisconsin law requires that the following elements be proved: (1) the plaintiff had a contractual relationship with a third party; (2) the defendant interfered with the relationship; (3) the interference was intentional; (4) a causal connection exists between the interference and the damages; and (5) the defendant was not justified or privileged to interfere. *See Dorr v. Sacred Heart Hosp.*, 228 Wis.2d 425, 597 N.W.2d 462 (Wis.Ct.App.1999).

■ The state court did not litigate the issue of whether the injury was "willful" or "malicious." The state court specifically found that First Weber had a "contract, or prospective contractual relationship with a third party," the "Defendant interfered with the relationship," "[t]he interference was intentional," and the Defendant's interference was "not justified." Based on these findings, it is clear the state court only determined whether the Defendant's *interference* was intentional. There is no indication that the state court determined whether the Defendant intended to cause First Weber's *injury*. It is, of course, possible that our Defendant intended to promptly reimburse First Weber for the commission lost by his intentional violation of the contract. As explained by the *Geiger* Court, to fall within § 523(a)(6) there must be evidence that the Defendant intended to cause an injury. *Geiger*, 523 U.S. at 61, 118 S.Ct. 974. Evidence that the Defendant intended to interfere "which then led to an injury" is not enough and accordingly, neither willfulness nor malice was "actually litigated." *Id.*

Other bankruptcy courts have reached similar conclusions about whether a state court's findings of "tortious interference with a contract" should be given preclusive effect in an action for nondischargeability under § 523(a)(6). *See In re Bellerud*, 2009 WL 1139470 (Bankr.E.D.Wis.2009); *In re Kraft*, 197 B.R. 660 (Bankr.W.D.Mo. 1996). In *Bellerud*, the bankruptcy court found that although the jury had found the debtor's actions were "not justified," the jury never determined whether the debtor intended injury to the plaintiff. *Bellerud* at *5 ("Although the jury found that the interference was not 'justified,' the evidence in this court fails to show that the Debtor acted with intent to injure [the plaintiff] or with certainty that injury would flow from his conduct"). Because the debtor's intentions with respect to the injury were never considered, the issues of "willfulness" and "malice" were never litigated by the state court and issue preclusion could not be applied. *Id.* at *7.

In *Kraft*, the bankruptcy court reached the same result, but followed a slightly different reasoning. *See In re Kraft*, 197 B.R. 660 (Bankr.W.D.Mo.1996). As in this case, a judgment for "tortious interference with a contract" had been entered against the debtor. *Id.* at 661. The jury in *Kraft* made a finding that the debtor's interference was "not justified," but did not make a direct finding on whether the debtor acted with "malice." *Id.* at 663. The bankruptcy court denied the plaintiff's motion for summary judgment. *Id.* at 660. At trial the bankruptcy court found that when committing the tort, the debtor intended primarily to replace her lost income, rather than to injure the plaintiff. *Id.* at 665. Because of this self-serving motive, the plaintiff's injury was not maliciously caused and the bankruptcy court allowed the debtor to discharge the judgment amount. *Id.*

First Weber disagrees with the holdings of these cases and cites two cases holding that a judgment for "tortious interference

with a contract" must be given preclusive effect. *In re Kearse*, 2010 WL 2025518 (Bankr.D.Md.2010); *In re Jercich*, 238 F.3d 1202 (9th Cir.2001). Neither case is controlling in this district and each can be distinguished from the case at hand. The debtor in *Jercich* was found liable for failing to pay an employee's contracted salary, and a judgment was entered in the employee's favor. *Jercich*, 238 F.3d at 1203. Along with the judgment, the state court also found that the debtor's actions amounted to oppression under CALIFORNIA CIVIL CODE § 3294. *Id.* at 1207. On appeal, citing a strong public policy in favor of the prompt payment of employees' wages, the Ninth Circuit held that the judgment arose from a "willful and malicious" injury sustained by the employee. *Id.* The court observed that the debtor clearly had the means to pay the employee, but callously refused to do so. *Id.* at 1208–09. Accordingly, the court held that the injury sustained by the plaintiff was "willful and malicious" and the judgment amount was not dischargeable. *Id.* at 1209.

Likewise in *Kearse*, the debtor was found liable for breaching her employment contract and diverting approximately $213,000 of contract opportunities away from her former employer. *Kearse*, 2010 WL 2025518 at *2. In granting summary judgment in favor of the plaintiff, the court found that by diverting contract opportunities away from the plaintiff, "[the debtor] *must have* intended the actual injury that resulted and not just intentionally pursued a course of action." *Id.* (emphasis added). The inference—that a debtor, who intentionally commits certain prohibited acts, intends a particular injury—is a leap this court is unwilling to make. As noted in *Geiger*, to satisfy the elements of § 523(a)(6) the party opposing discharge must establish that the debtor intended an injury to occur, rather than "intending certain conduct which otherwise leads to an injury." *Geiger*, 523 U.S. at 57, 118 S.Ct. 974.

 Even if the state court's findings did satisfy the first step in issue preclusion, its ruling would certainly not satisfy the second. The second step in the issue preclusion analysis requires that this court use its discretion to weigh various factors in deciding whether the application of issue preclusion would be fundamentally fair to the opposing litigant. *Crozier*, 173 Wis.2d at 689, 495 N.W.2d 327. The factors include—"(1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; (5) are matters of public policy and individual circumstances involved that would render the application of [issue preclusion] to be fundamentally unfair, including inadequate opportunity or incentive to obtain full and fair adjudication in the initial action." *Id.* at 688–89, 495 N.W.2d 327. The question of "fundamental fairness" is "to be made by the trial court judge on a case-by-case basis." *Id.*

In this case, two of the listed factors—the extensiveness of the proceedings and the differences in the evidentiary burdens—weigh in favor of the Defendant. To explain, the disposition of the state court case was by summary judgment as opposed to a full evidentiary trial. In the initial hearing for summary judgment in state court, the Defendant represented himself and submitted documentation and

letters in support of his position. Nothing he submitted was offered in a form admissible under WIS.STAT. § 802.08(3). Although the judge indicated that she "read everything that [the Defendant] presented" she declined to consider any evidence that was not "properly before" the court. *See* WIS.STAT. § 802.08(3) (requiring that evidence submitted opposing or in favor of summary judgment "be made on personal knowledge and ... set forth such evidentiary facts as would be admissible in evidence"). Thus the Defendant's evidence, and thus his defense, was not considered by the court when it disposed of the case. Now in bankruptcy court, First Weber is asking this court to make a similar cursory decision. I decline this invitation in light of the state court's limited review. Any issues previously decided warrant relitigation in this court.

In addition, First Weber faced a lower burden of proof in the state court than it has now. All First Weber did in state court was prove a prima facie case for its tortious interference with a contract claim. *See* WIS.STAT. § 802.08(2); *see also Tews v. NHI, LLC,* 330 Wis.2d 389, 793 N.W.2d 860, 2010 WL 5599976 (2010) (requiring circuit courts to determine whether the moving party has established a prima facie case before granting summary judgment). Wisconsin courts have long characterized a prima facie case as one "established only when evidentiary facts are stated which, if they remain uncontradicted by the opposing party's affidavits, resolve all factual issues in the moving party's favor." *Walter Kassuba, Inc. v. Bauch,* 38 Wis.2d 648, 158 N.W.2d 387 (Wis.1968). This burden of proof is significantly lower than a plaintiff having to *prove* its case by a preponderance of the evidence as required in a case seeking the nondischargeability of a claim. *See Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (requiring claimant to prove its case

for nondischargeability by a preponderance of the evidence).

To further illustrate, a party moving for summary judgment need only submit affidavits (supported or not supported by other evidence) to cross the threshold of having a prima facie claim. If the affidavits even somewhat support the elements of an alleged claim, and the nonmoving party does not properly contradict the facts in those affidavits, then the moving party prevails and a judgment is entered. As reflected in this illustration, the "burden" placed on the moving party in summary judgment is substantially lower than requiring the moving party *prove* its case by a preponderance of the evidence. Because the state court action applied this lower evidentiary burden when disposing of the case, any shared issues between the two cases must be relitigated.

For the reasons stated above, the issues of willfulness and malice were not litigated by the state court and it is not "fundamentally fair" to preclude the Defendant from litigating any issues. First Weber's Motion for Summary Judgment is DENIED.

## ORDER

The Court having reached the conclusions of law in the memorandum decision filed this date, it is hereby ORDERED that the Plaintiff's motion for summary judgment be DENIED.