Town of Delafield, Plaintiff-Respondent,†

v.

Eric Winkelman and Christine Winkelman,
Defendants-Appellants.

Court of Appeals

*No. 02–0979. Oral argument February 12, 2003.—Decided
April 2, 2003.*

2003 WI App 92

(Also reported in 663 N.W.2d 324.)

† Petition to review granted 9-12-03.

On behalf of the defendants-appellants, there were briefs and oral argument by *James W. Hammes* of *Cramer, Multhauf & Hammes, LLP* of Waukesha.

On behalf of the plaintiff-respondent, there was a brief submitted by *H. Stanley Riffle* and *Julie A. Aquavia* of *Arenz, Molter, Macy & Riffle, S.C.* of Waukesha. There was oral argument by *H. Stanley Riffle*.

Before Brown, Anderson and Snyder, JJ.

¶ 1. BROWN, J.    In this state, if a governmental entity is faced with a zoning ordinance violation, it may seek to penalize the violator by court-ordered forfeitures or it may seek equitable relief such as an injunction or an abatement action. But if the governmental entity seeks such equitable relief, the violator may request that the circuit court decline to grant the equitable relief based upon equitable reasons on the violator's behalf. So said our supreme court in *Forest County v. Goode*, 219 Wis. 2d 654, 656–57, 579 N.W.2d 715 (1998). Thus, the law is that a landowner may contest whether he or she is in violation and, even if so found, can further contest its enforcement. The law appears to allow the violator "two kicks at the cat," once to defend against the claim that there is a violation and, second, to defend against enforcement of a sanction for that violation. While we question the wisdom of such a rule, we must adhere to it. *Goode* applies to the instant case and we must reverse the circuit court's belief that if separate litigation has previously determined that there was a violation, it is the law of the case and the court has no power to refuse to enforce a sanction for that violation.

266

¶ 2. Eric and Christine Winkelman own a lot containing two houses in the Town of Delafield. The Winkelmans use one of the two homes on their lot as their own residence and the other home is a rental unit. Both of the homes are considered nonconforming under the Town's zoning code. The Winkelmans' property is located in a residential zoning district, which allows for single-family residences. The code's site regulations further provide that no more than one principal building or structure may be allowed on a lot in such a district, with certain exceptions inapplicable to this case.

¶ 3. In 1991, the Winkelmans obtained a building permit for interior remodeling of the two homes. After construction began, the Town's building inspector discovered that the remodeling involved work on a legal, nonconforming structure and placed a stop-work order on the project. As a result of the stop-work order, the Winkelmans applied for variances from the Town's zoning code. The Winkelmans' request for the variances was granted in part, but the zoning board placed certain conditions on the approval of the variances. One of the conditions required the Winkelmans to remove the rental residence from the property within three years of the date of the board's decision, which was dated September 30, 1994.

¶ 4. The Winkelmans sought certiorari review of the board's decision on the variance, claiming that the board lacked the authority to impose the condition. The circuit court upheld the decision and the Winkelmans did not appeal. The Town then extended the deadline for removal of the rental residence from March 1998 to April 1999.

¶ 5. As of April 1999, the Winkelmans had not yet removed the rental residence from their property. To

enforce the condition of the variance, the board brought a motion entitled Motion for Further Relief requesting that the certiorari court order the Winkelmans to raze the house or the Town be allowed to do so. The certiorari court granted the board's motion. We reversed, holding that the board needed to obtain jurisdiction over the Winkelmans for the enforcement action by serving a summons and complaint or by serving an appropriate original writ. *Winkelman v. Town of Delafield*, 2000 WI App 254, ¶ 1, 239 Wis. 2d 542, 620 N.W.2d 438 (*Winkelman I*).

¶ 6.   The Town then filed an original complaint in the circuit court seeking issuance of an order directing the Winkelmans to remove the rental residence from their property immediately and seeking fines for the Winkelmans' failure to do so. In the Winkelmans' answer to the complaint, the Winkelmans raised the doctrine of estoppel as an affirmative defense. The Town then moved for summary judgment. The Winkelmans filed a memorandum and affidavit in opposition to the motion for summary judgment, contending that a number of equitable factors existed which, if considered by the circuit court, would result in the denial of the Town's requested order to raze.

¶ 7.   The circuit court orally granted the Town's motion for summary judgment, concluding that it had no authority to weigh the competing equities in the case. The court stated:

> I have no power to change the—actually, the position taken by the Town which was upheld by Judge Mawdsley, not appealed on that issue. There is now a judgment entered that approves of the variance . . . . I have no alternative but to grant this motion for summary judgment . . . and enter an Order allowing the Town to raze the building if the Winkelmans do not.

The court subsequently imposed a forfeiture of $25 per day from April 8, 1999, until January 31, 2002. The oral ruling and the forfeiture were then reduced to a written summary judgment. The Winkelmans appeal the decision granting summary judgment.

¶ 8. We review a circuit court's grant or denial of summary judgment de novo. *Waters v. U.S. Fid. & Guar. Co.*, 124 Wis. 2d 275, 278, 369 N.W.2d 755 (Ct. App. 1985). [S]ummary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *M & I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 497, 536 N.W.2d 175 (Ct. App. 1995). We will reverse a decision granting summary judgment if the circuit court incorrectly decided legal issues or material facts are in dispute. *Coopman v. State Farm Fire & Cas. Co.*, 179 Wis. 2d 548, 555, 508 N.W.2d 610 (Ct. App. 1993).

¶ 9. On appeal, the Winkelmans submit that the circuit court erred in concluding that it did not retain the power to consider the equitable arguments the Winkelmans made in response to the Town's request for the issuance of a raze order. The Winkelmans assert that the Town is seeking relief in accordance with the provisions of WIS. STAT. § 62.23(8) (2001–02)[2] and pur-

---

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted. WISCONSIN STAT. § 62.23(8) provides:

> **(8)** OTHER MEASURES OF ENFORCEMENT AND REMEDIES; PENALTY. Any building erected, constructed or reconstructed in violation of this section or regulations adopted pursuant thereto shall be deemed an unlawful structure, and the building inspector or city attorney

suant to *Goode* and *Lake Bluff Housing Partners v. City of South Milwaukee*, 2001 WI App 150, 246 Wis. 2d 785, 632 N.W.2d 485 (*Lake Bluff IV*), *review denied,* 2002 WI 23, 250 Wis. 2d 556, 643 N.W.2d 93 (Wis. Jan. 31, 2002) (No. 00–1958), we must remand the matter to the circuit court for analysis of the equitable considerations underpinning the grant of a raze order.

¶ 10.   In *Goode*, our supreme court considered whether a circuit court retains the equitable power to deny injunctive relief after a zoning ordinance violation has been proven. *Goode*, 219 Wis. 2d at 656. There, the County initiated an enforcement action pursuant to WIS. STAT. § 59.69(11) against a landowner who had constructed a home in violation of a county zoning ordinance and who subsequently had been denied a variance from the ordinance. *Goode*, 219 Wis. 2d at 656–59. The County requested the assessment of forfeitures and an order compelling the landowner to relocate his house to comply with a setback requirement contained in the ordinance. *Id.* at 656. The County had asserted that the statute did not give circuit

or other official designated by the council may bring action to enjoin such erection, construction or reconstruction, or cause such structure to be vacated or removed. It shall be unlawful to erect, construct or reconstruct any building or structure in violation of this section or regulations adopted pursuant thereto. Any person, firm or corporation violating such provisions shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not more than $500 . . . . In case any building or structure is or is proposed to be erected, constructed or reconstructed, or any land is or is proposed to be used in violation of this section or regulations adopted pursuant thereto, the building inspector or the city attorney or any adjacent or neighboring property owner who would be specially damaged by such violation, may, in addition to other remedies provided by law, institute injunction, mandamus, abatement or any other appropriate action or proceeding to prevent or enjoin or abate or remove such unlawful erection, construction or reconstruction.

courts discretion over whether to require compliance with zoning ordinances. *Id.* at 663. In the County's view, once a violation was proven, the court had no choice but to grant the relief sought pursuant to § 59.69(11). *Goode*, 219 Wis. 2d at 663–64.

¶ 11.  The supreme court, however, concluded that when the legislature adopted Wis. Stat. § 59.69(11), giving the County or an owner of real estate within the district affected by the zoning regulation the option of asking a circuit court sitting in equity for injunctive relief as a remedy for a zoning ordinance violation, it did not intend to eliminate the traditional equitable powers of the court through § 59.69(11). *Goode*, 219 Wis. 2d at 657. Accordingly, the court held that when a circuit court is asked to grant injunctive relief for a proven zoning ordinance violation, § 59.69(11) does not eliminate the circuit court's equitable power to deny injunctive relief in a particular case. *Goode*, 219 Wis. 2d at 657. The court then remanded the matter to the trial court to weigh the equitable considerations presented in the case. *Id.*

¶ 12.  In the sequence of *Lake Bluff* cases, we considered whether *Goode*'s analysis applies with equal force when relief is sought pursuant to Wis. Stat. § 62.23(8). *See Lake Bluff IV*, 2001 WI App 150 at ¶¶ 7, 9; *Lake Bluff Housing Partners v. City of South Milwaukee*, 222 Wis. 2d 222, 231–32, 588 N.W.2d 45 (Ct. App. 1998) (*Lake Bluff III*). There, Lake Bluff Housing Partners purchased land with the intention of building multi-family housing; however, the City of South Milwaukee later rezoned the land for single-family dwellings and refused to issue building permits to Lake Bluff. *Lake Bluff IV*, 2001 WI App 150 at ¶ 3. Lake Bluff sued the City, contending that it had vested rights in the prior zoning classification. *Id.* at ¶¶ 3, 4. Lake Bluff

was successful in the lower courts; however, after the City issued the building permits and Lake Bluff had begun construction, our supreme court reversed. *Id.* at ¶¶ 4–5.

¶ 13.  Subsequently, Lake Bluff initiated a declaratory judgment action, arguing that the City should be equitably estopped from initiating an enforcement action pursuant to WIS. STAT. § 62.23(8) and seeking an order that would allow it both to revoke the building permits it had issued to Lake Bluff and to have the dwellings Lake Bluff had begun constructing razed. *Lake Bluff III*, 222 Wis. 2d at 226–27. We determined that the City was not estopped from revoking the building permits and ordering the property razed. *Id.* at 224. We also concluded, however, that while Lake Bluff had already contested the denial of the building permits and lost on legal grounds, it had not had the opportunity to defend itself in equity as mandated by *Goode. See Lake Bluff III*, 222 Wis. 2d at 231–32. We therefore remanded the case to the trial court for a determination as to whether *Goode*'s analysis of WIS. STAT. § 59.69(11) applied to an analysis of WIS. STAT. § 62.23(8), and, if so, whether "there [were] compelling equitable reasons" which would make *Lake Bluff* one of "those rare cases" where the requested order of abatement should not be issued. *Lake Bluff III*, 222 Wis. 2d at 231–32 (citations omitted). On appeal after the remand, we held that the trial court had properly weighed the equitable considerations from *Goode* and affirmed the circuit court judgment ordering Lake Bluff to raze and remove its buildings. *Lake Bluff IV*, 2001 WI App 150 at ¶ 1.

¶ 14.  *Goode* and *Lake Bluff IV* teach us that where a governmental entity exercises its authority pursuant to either WIS. STAT. § 59.69(11) or WIS. STAT. § 62.23(8) after a zoning ordinance violation has been

proven and seeks to enforce the zoning ordinance through an injunction or abatement, the reviewing court retains the power to deny the relief sought and the property owner can defend himself or herself in equity. Here, although the certiorari court already determined that the board's attachment of a condition to the variance is reasonable and the Winkelmans did not appeal that decision, that matter, unlike the one before us, was not an enforcement action on the part of the Town and the court did not consider the equities arising in the case.

¶ 15.    In *Winkelman I*, we noted that in seeking to ensure the razing or removal of the second residence, the Town had two options:   the Town could initiate a proceeding before the board to revoke the variance and, therefore, require the residential structure to be brought into compliance with the zoning ordinances, or the Town could bring an action to seek enforcement of the raze condition or fines for refusing to raze the house. *Winkelman I*, 2000 WI App 254 at ¶¶ 10–11. The Town elected the latter and has now initiated a separate action against the Winkelmans seeking to enforce the order of the certiorari court upholding the variance condition. While we do question the prudence of allowing the Winkelmans to have another opportunity to challenge the variance condition under these circumstances, it appears that because this is an enforcement action utilizing an equitable remedy, *Goode* and *Lake Bluff IV* dictate that we remand the case to the circuit court to balance the competing equities.[3]

---

[3] We note that unlike both *Forest County v. Goode*, 219 Wis. 2d 654, 579 N.W.2d 715 (1998), and *Lake Bluff Housing Partners v. City of South Milwaukee*, 2001 WI App 150, 246 Wis. 2d 785, 632 N.W.2d 485 (*Lake Bluff IV*), *review denied*, 2002 WI 23,

¶ 16. The Town contends that *Goode* and *Lake Bluff IV* do not control the disposition of this case primarily for three reasons. First, the Town asserts that *Goode* only applies to cases where the governmental entity asks for equitable relief. The Town claims that it is not seeking equitable relief and all it is in fact doing is seeking enforcement of the condition attached to the variance requiring the Winkelmans to tear down the second residence on their property. The Winkelmans, however, refused to raze the structure. The government now wants to step in and order the razing of the structure to take place. A raze order is an abatement order. *See Lake Bluff IV*, 2001 WI App 150 at ¶ 8 (using the terms "abatement" and "raze order" interchangeably). It is therefore equitable in nature. *See State ex rel. Miller v. Anthony*, 647 N.E.2d 1368, 1371 (Ohio 1995) (defining an abatement action as "not a common law action, but a summary proceeding more in the nature of a suit in equity").

¶ 17. In its next argument, the Town attempts to distinguish this case from *Goode*. The Town argues that

250 Wis. 2d 556, 643 N.W.2d 93 (Wis. Jan. 31, 2002) (No. 00–1958), this case involves a legal nonconforming use. The spirit of zoning is to restrict nonconforming uses and to eliminate such uses as quickly as possible. *City of Lake Geneva v. Smuda*, 75 Wis. 2d 532, 538, 249 N.W.2d 783 (1977). The application of *Goode*'s analysis, allowing courts to balance the equities of a situation and deny the relief sought, appears to run contrary to well-established principles of zoning law. This is because there is a chance that the nonconforming use would be allowed to stay, thus running counter to public policy. We therefore question whether *Goode* should be applied when the case involves legal nonconforming uses. However, we are not the proper court to disturb the precedent our supreme court set in *Goode*.

"[i]n [*Goode*], which the Winkelmans rely on, the County sought a forfeiture and an order directing the property owner to move his residence so that it complied with the shore setback provisions of the county ordinance." The Town contends that here, unlike in *Goode*, "the town asked that a forfeiture be assessed for the alleged violations and that an order be issued directing the Winkelmans to raze the structure in compliance with the terms of the variance . . . ." It appears that the Town is arguing that these cases are distinguishable because in *Goode*, the County requested an order to move a residence to comply with an existing order and, here, the Town seeks an order to remove an existing residence so as to comply with an existing variance. However, the distinction between seeking an order to move an existing residence so as to comply with an existing order and seeking an order to remove an existing residence so as to comply with an existing variance is immaterial. Both are enforcement actions.

¶ 18.    Next, at oral argument, the Town contended that unlike the property owners in *Goode* and *Lake Bluff IV*, who never had the opportunity to argue the equities prior to their appeals, the Winkelmans already made equitable arguments during the certiorari review action and thus any equitable claim is precluded. The Town observed that certiorari review has four prongs and is limited to whether the agency:   (1) kept within its jurisdiction, (2) acted according to law, (3) did not act arbitrarily or unreasonably or according to its will and not its judgment, and (4) made a decision based on evidence one might reasonably use to make the determination in question. *Winkelman I*, 2000 WI App 254 at ¶ 3. The Town zeroed in on the third prong—*whether the agency acted arbitrarily or unreasonably or according to its will and not its judgment.* The Town claimed

that whenever a person defends himself or herself based on the third prong, he or she is in reality defending on equitable grounds and the court sits as a court of equity as to the third prong. In applying its view of the law to this case, the Town posited that the Winkelmans had the opportunity to argue that the variance is unreasonable during the certiorari action and that argument is in concert with the equitable arguments they make here and thus *Goode* should not apply. The Town pointed out that in its decision, the certiorari court stated:

> The court finds that [the Town and the board] acted reasonably in placing the conditions upon the approval of the requested variance. [The Town and the board's] actions were neither arbitrary nor oppressive. Given the nature of the conditions imposed upon the granting of [the Winkelmans'] variance, the court finds them to be within the scope of defendants' power and not unreasonably onerous considering the use of the property. While [the Winkelmans] indicate in their brief that they will suffer an undue hardship if forced to raze the rental unit because their mortgage financing was contingent upon the rental income, they have provided absolutely no evidence that such is the case. The court finds that none of [the Winkelmans'] arguments taken individually or collectively, meet the burden of convincing this court that [the Town and the board] made arbitrary, unreasonable or oppressive decisions in placing conditions upon the variance.

¶ 19. First, we find no authority, and counsel at oral argument was unable to cite to any, that says that courts sit in equity in certiorari actions. In fact, the scope of our review in a certiorari action is limited to the record, *Ledger v. City of Waupaca Bd. of Appeals*, 146 Wis. 2d 256, 261, 430 N.W.2d 370 (Ct. App. 1988),

while *Goode*'s equitable analysis sweeps more broadly. *See Goode*, 219 Wis. 2d at 684 ("In deciding whether to deny a request for an injunction . . . the circuit court should take evidence and weigh any applicable equitable considerations . . . ."). While in certain circumstances a certiorari court has the authority to take additional evidence, *see Nielsen v. Waukesha County Bd. of Supervisors*, 178 Wis. 2d 498, 521–22, 504 N.W.2d 621 (Ct. App. 1993), simply allowing a court to add to the record does not mean that the court is then sitting in equity. Second, our review of case law reveals that in a certiorari action, the court reviews the reasonableness of the *board's action* and not, as the Town would have us believe, the reasonableness of the *ordinance* itself, which is what is at issue in this matter. *See Ledger*, 146 Wis. 2d at 260–61 (noting that a certiorari action is not the appropriate forum for testing the validity of laws or ordinances, but rather is one for review of a board's decision alone). We therefore reject the Town's argument.

¶ 20. But that does not end the matter because even if the third prong—whether the board acted reasonably—is not equitable in nature, the fact of the matter is that the Winkelmans did raise an equitable argument during the certiorari action. The Winkelmans argued that the board's action was unreasonable because if they razed the second residence, they would not be able to make the mortgage payments on their own home and therefore would suffer undue hardship. The certiorari court, however, determined that the Winkelmans failed to provide any evidence demonstrating that such was the case and rejected the Winkelmans' argument. This equitable argument, therefore, has already been determined and the doctrine of issue preclusion controls it. *See Michelle T. v. Crozier*, 173

Wis. 2d 681, 687, 495 N.W.2d 327 (1993) (concluding that the doctrine of issue preclusion prevents "the relitigation of issues that have been contested in a previous action between the same or different parties"). Accordingly, even though we are reversing and remanding the case to allow the Winkelmans to make their equitable arguments, on remand they may not raise this particular issue again.

*By the Court.*—Order reversed and cause remanded with directions.