TOWN OF DELAFIELD, Plaintiff-Respondent-Petitioner,

v.

Eric WINKELMAN and Christine Winkelman, Defendants-Appellants.

Supreme Court

No. 02–0979. *Oral argument December 4, 2003.—Decided March 5, 2004.*

2004 WI 17

(Also reported in 675 N.W.2d 470.)

111

For the plaintiff-respondent-petitioner there were briefs by *H. Stanley Riffle, Julie A. Aquavia* and *Arenz, Molter, Macy & Riffle, S.C.,* Waukesha, and oral argument by *H. Stanley Riffle.*

For the defendants-appellants there was a brief by *James W. Hammes* and *Cramer, Multhauf & Hammes, LLP,* Waukesha, and oral argument by *James W. Hammes.*

¶ 1. ANN WALSH BRADLEY, J. The petitioner, Town of Delafield ("Town"), seeks review of a published decision of the court of appeals that reversed the summary judgment granted by the circuit court in favor of the Town.[1] After a zoning violation had been proven in a separate proceeding, the Town brought this enforcement action seeking, as sanction for the violation, a raze order for the removal of a legal nonconforming rental unit from the Winkelmans' property.

¶ 2. The Town urges this court to clarify whether the circuit court had the power to consider equitable arguments in this enforcement action. It asserts that even if the circuit court generally has such power, it

---

[1] *Town of Delafield v. Winkelman,* 2003 WI App 92, 264 Wis. 2d 264, 663 N.W.2d 324 (reversing a decision of the circuit court for Waukesha County. Judge Patrick L. Snyder issued the oral ruling to the issue on appeal. As a result of judicial rotation, Judge Robert G. Mawdsley issued the written order implementing the oral ruling.).

should not be exercised here because the Winkelmans already received a full opportunity to challenge the equities in the certiorari review. The Winkelmans counter that the circuit court lacked subject matter jurisdiction to consider the Town's enforcement action.

¶ 3. We conclude that the circuit court had subject matter jurisdiction to enter the orders. We also agree with the court of appeals that the circuit court had the power to consider the Winkelmans' equitable arguments in the context of this enforcement action. Moreover, we determine that the circuit court may properly exercise that power here. Accordingly, we affirm the court of appeals.

I

¶ 4. The Winkelmans own a lot in the Town of Delafield containing two houses. Both are legal, but nonconforming structures based on their location on the lot. The houses are also legal, but nonconforming uses due to zoning restrictions that permit only one residence per lot. At all times relevant to these proceedings, the Winkelmans used one of the houses as their own residence and the other as a rental unit.[2]

¶ 5. In 1991, the Winkelmans obtained a building permit for interior remodeling of the two houses. After construction began, the new Town building inspector discovered that the remodeling involved work on a legal nonconforming structure and issued a stop-work order. As a result of the stop-work order, the Winkelmans applied for a variance from the Town zoning board.

¶ 6. On September 30, 1994, the Town zoning board granted the Winkelmans' request for a variance

---

[2] According to the Town's petition for review, the Winkelmans no longer use one home as a residence; they now live elsewhere.

in part, but placed certain conditions on its approval. One of the conditions required the Winkelmans to remove the rental residence from the property within three years of the date of the board's decision.

¶ 7. The Winkelmans thereafter sought certiorari review of the board's decision. Among other arguments, the Winkelmans claimed that the board's action was unreasonable because their mortgage financing was contingent upon the rental income of the second residence. The certiorari court rejected this argument, noting that the Winkelmans provided no evidence to support it. Accordingly, the court upheld the board's decision, and the Winkelmans did not appeal.

¶ 8. After certiorari review, the Town extended the deadline for removing the rental residence from March 1998 to April 1999. When the Winkelmans did not remove the rental house by April 1999, the Town's zoning board brought a motion requesting the certiorari court to order the Winkelmans to raze the house or, in the alternative, allow the Town to do so. The certiorari court granted the board's motion, and the Winkelmans appealed.

¶ 9. The court of appeals reversed the certiorari court. *Winkelman v. Town of Delafield,* 2000 WI App 254, ¶ 1, 239 Wis. 2d 542, 620 N.W.2d 438 (*Winkelman I*). It did so on the ground that the board needed to obtain jurisdiction over the Winkelmans for the enforcement action either by serving a summons and complaint or by serving an appropriate original writ. *Id.*

¶ 10. Following the decision of the court of appeals, the Town commenced this action pursuant to Wis. Stat. § 62.23(8) (2001–02)[3] by filing a complaint requesting forfeitures along with an order directing the Winkelmans to remove the rental residence. The Town then moved for summary judgment.

¶ 11. The circuit court granted the Town's motion for summary judgment and rejected the Winkelmans' argument that under *Forest County v. Goode*, 219 Wis. 2d 654, 579 N.W.2d 715 (1998), it was required to hear their equitable argument. In its oral decision, the court concluded that it did not have the equitable power in

---

[3] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted. Wis. Stat. § 62.23(8) provides:

(8) OTHER MEASURES OF ENFORCEMENT AND REMEDIES; PENALTY. Any building erected, constructed or reconstructed in violation of this section or regulations adopted pursuant thereto shall be deemed an unlawful structure, and the building inspector or city attorney or other official designated by the council may bring action to enjoin such erection, construction or reconstruction, or cause such structure to be vacated or removed. It shall be unlawful to erect, construct or reconstruct any building or structure in violation of this section or regulations adopted pursuant thereto. Any person, firm or corporation violating such provisions shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not more than $500. Each and every day during which said illegal erection, construction or reconstruction continues shall be deemed a separate offense. In case any building or structure is or is proposed to be erected, constructed or reconstructed, or any land is or is proposed to be used in violation of this section or regulations adopted pursuant thereto, the building inspector or the city attorney or any adjacent or neighboring property owner who would be specially damaged by such violation, may, in addition to other remedies provided by law, institute injunction, mandamus, abatement or any other appropriate action or proceeding to prevent or enjoin or abate or remove such unlawful erection, construction or reconstruction.

115

the context of the enforcement action to deny the injunctive relief. It explained:

> But now we're back on an independent action and I have no power to change the — actually, the position taken by the Town which was upheld by Judge Mawdsley, not appealed on that issue. There is now a judgment entered that approves of the variance . . . . I have no alternative but to grant this motion for summary judgment . . . and enter an [o]rder allowing the Town to raze the building if the Winkelmans do not.

¶ 12. The circuit court subsequently imposed a forfeiture of $25 per day from April 8, 1999, until January 31, 2002. The oral ruling granting the raze order and a forfeiture was later reduced to a written order. The Winkelmans again appealed.

¶ 13. The court of appeals reversed the circuit court's decision. *Town of Delafield v. Winkelman,* 2003 WI App 92, ¶ 1, 264 Wis. 2d 264, 663 N.W.2d 324 (*Winkelman II*). It observed that when a governmental entity seeks equitable relief such as an injunction or abatement, the law appeared to provide property owners with "two kicks at the cat": first, to defend against the claim that there is a violation and, second, to defend against enforcement of a sanction for that violation. *Id.,* ¶ 14. Although the court questioned the wisdom of this approach, it determined that *Goode* mandated consideration of the equitable arguments. *Id.,* ¶ 15. Moreover, it rejected the Town's assertion that the Winkelmans had already made their equitable arguments during the certiorari review. *Id.,* ¶ 18. Accordingly, the court of appeals remanded the case back to the circuit court for a hearing on the equities. *Id.,* ¶ 20. It prohibited the Winkelmans from reasserting the argument previously rejected by the certiorari court, however, under the doctrine of issue preclusion. *Id.*

¶ 14. As a threshold matter, we must examine the issue of subject matter jurisdiction. Whether a court has subject matter jurisdiction of a particular action is a question of law, subject to independent appellate review. *See Gonzales v. AM Cmty. Credit Union,* 150 Wis. 2d 773, 777, 442 N.W.2d 536 (Ct. App. 1989).

¶ 15. Additionally, this case provides us with an opportunity to review the circuit court's power to consider equitable arguments in the context of an enforcement action. It also allows us to determine whether the court may consider equitable arguments which have been previously rejected by a certiorari court. These issues are raised in the context of summary judgment. We review a circuit court's grant or denial of summary judgment independently, applying the same methodology as the circuit court. *O'Neill v. Reemer,* 2003 WI 13, ¶ 8, 259 Wis. 2d 544, 657 N.W.2d 403 (citing *Torgerson v. Journal/Sentinel, Inc.,* 210 Wis. 2d 524, 536, 563 N.W.2d 472 (1997)).

¶ 16. Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.,* ¶ 8. Here, there are no material facts in dispute that are relevant to the issue before us. Therefore, we are presented with a question of law, which is subject to independent appellate review. *Id.* (citing *Lewis v. Physicians Ins. Co. of Wis.,* 2001 WI 60, ¶ 9, 243 Wis. 2d 648, 627 N.W.2d 484.)

## III

¶ 17. We begin with the inquiry of whether the circuit court had subject matter jurisdiction. In their brief, the Winkelmans assert that the circuit court lacked subject matter jurisdiction to consider the Town's enforcement action. Specifically, they contend that the jurisdiction of the Town's ordinance did not extend to them, as their property is actually controlled by the Waukesha County Shoreland Code. In the case's nine-year history, this is the first time the Winkelmans have raised the issue of subject matter jurisdiction.

¶ 18. The principal authority the Winkelmans rely upon for their argument is Wis. Stat. § 59.692(2)(b). The statute provides, "[i]f an existing town ordinance relating to shorelands is more restrictive than an ordinance later enacted under this section affecting the same shorelands, it continues as a town ordinance in all respects to the extent of the greater restrictions, but not otherwise." Wis. Stat. § 59.692(2)(b). The Winkelmans argue that by the application of the statute, the Town zoning ordinance could regulate their shoreland property only to the extent that it imposed a greater restriction than does the County ordinance. An examination of the two ordinances, they maintain, reveals that it does not. Thus, they argue the Town's ordinance does not apply to their property. Consequently, the court does not have jurisdiction over this claimed violation.

¶ 19. The problem with the Winkelmans' argument is that it confuses the jurisdiction of the zoning board with that of the court. In Wisconsin, circuit courts are courts of general jurisdiction. *Mack v. State,* 93 Wis. 2d 287, 294, 286 N.W.2d 563 (1980). They have

subject matter jurisdiction of all matters, civil and criminal, not excepted in the constitution or prohibited by law. *Id.* (citing *Dumer v. State,* 64 Wis. 2d 590, 595, 219 N.W.2d 592 (1974)). This includes the authority to hear zoning enforcement actions arising from either town or county ordinances.

¶ 20. The Winkelmans' claim is better understood as an attack on the Town's jurisdiction to regulate their property in the first place. This attack, however, should have been made at the initial certiorari review. After all, one of the issues certiorari courts determine is whether the Town kept within its jurisdiction.[4] Because the Winkelmans did not timely object to the Town's jurisdiction, we do not address the merits of the issue and deem it as waived.

## IV

¶ 21. We next address whether the circuit court had the power to consider the Winkelmans' equitable arguments in the context of an enforcement proceeding. The relevant precedent is *Goode* and the series of cases culminating in *Lake Bluff Housing Partners v. City of South Milwaukee,* 2001 WI App 150, 246 Wis. 2d 785, 632 N.W.2d 485 (*Lake Bluff IV*). We examine these cases in turn.

---

[4] Common-law certiorari is limited to determining: (1) whether the board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its actions were arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order of determination in question. *Hanlon v. Town of Milton,* 2000 WI 61, ¶ 23, 235 Wis. 2d 597, 612 N.W.2d 44.

¶ 22. In *Goode,* this court was asked to determine whether a circuit court retained equitable power to deny injunctive relief after a zoning violation has been proven. 219 Wis. 2d at 656. There, the County initiated an enforcement action pursuant to Wis. Stat. § 59.69(11)[5] against Goode for noncompliance with a zoning order. *Id.* at 656–57. The County requested assessment of forfeitures and an injunctive order compelling Goode to relocate his house to comply with a 50–foot setback requirement. *Id.* at 656. In the County's view, the statute in question did not give circuit courts discretion over whether to require compliance with zoning ordinances. *Id.* at 663. This court disagreed.

¶ 23. After construing Wis. Stat. § 59.69(11), we concluded that the legislature did not intend to eliminate the traditional equitable powers of the circuit court. *Id.* at 657. Therefore, we held that "when a circuit court is asked to grant injunctive relief for a proven zoning ordinance violation, § 59.69(11) [did] not eliminate the circuit court's equitable power to deny injunctive relief in a particular case." *Id.* Accordingly, we affirmed the decision of the court of appeals revers-

---

[5] Wisconsin Stat. § 59.69(11) provides:

(11) PROCEDURE FOR ENFORCEMENT OF COUNTY ZONING ORDINANCE. The board shall prescribe rules, regulations and administrative procedures, and provide such administrative personnel as it considers necessary for the enforcement of this section, and all ordinances enacted in pursuance thereof. The rules and regulations and the districts, setback building lines and regulations authorized by this section, shall be prescribed by ordinances which shall be declared to be for the purpose of promoting the public health, safety and general welfare. The ordinances shall be enforced by appropriate forfeitures. Compliance with such ordinances may also be enforced by injunctional order at the suit of the county or an owner of real estate within the district affected by the regulation.

ing the order to relocate Goode's house and remanded the matter for a hearing on the equities. *See id.*

¶ 24. In the subsequent series of *Lake Bluff* cases, the court of appeals considered whether the analysis in *Goode* applied to situations where relief is sought pursuant to a different enforcement provision for zoning violations, Wis. Stat. § 62.23(8). *See Lake Bluff IV,* 246 Wis. 2d 785, ¶ 3; *Lake Bluff Housing Partners v. City of Milwaukee,* 222 Wis. 2d 222, 231–32, 588 N.W.2d 45 (Ct. App. 1998) *(Lake Bluff III).* There, Lake Bluff Housing Partners purchased property with the intention of using it for multi-family buildings. *Lake Bluff IV,* 246 Wis. 2d 785, ¶ 3. Before any building permits were issued, however, South Milwaukee rezoned the property for single-family residences. *Id.* Lake Bluff filed suit, claiming that it had vested rights in the property. *Id.,* ¶¶ 3, 4.

¶ 25. Lake Bluff was successful in its argument before both the circuit court and court of appeals. *Lake Bluff Housing v. City of South Milwaukee,* 188 Wis. 2d 230, 233, 525 N.W.2d 59 (Ct. App. 1994) *(Lake Bluff I).* This court, however, reversed, concluding that because Lake Bluff "never submitted an application for a building permit conforming to the zoning and building code requirements in effect at the time of the application," it did not acquire any vested rights. *Lake Bluff Housing v. City of South Milwaukee,* 197 Wis. 2d 157, 182, 540 N.W.2d 189 (1995) *(Lake Bluff II).* While the City sought review in this court, Lake Bluff had finished construction on its project. *Lake Bluff IV,* 246 Wis. 2d 785, ¶ 5.

¶ 26. After this court issued its decision, Lake Bluff filed a declaratory action in circuit court, arguing that the City should be equitably estopped from initiating an enforcement action pursuant to Wis. Stat.

§ 62.23(8). *Id.*, ¶¶ 6–7. The circuit court agreed. *Id.*, ¶ 6. The court of appeals, however, reversed the circuit court's decision. *Lake Bluff III*, 222 Wis. 2d at 224. In doing so, it remanded the case for a determination as to whether *Goode*'s analysis applied to an analysis of Wis. Stat. § 62.23(8), and, if so, whether "there [were] compelling equitable reasons" that the requested order of abatement should not be issued. *Id.* at 231–32.

¶ 27. On appeal after remand, the court of appeals concluded that the circuit court had properly weighed the equitable considerations under *Goode* and affirmed the judgment ordering Lake Bluff to remove its buildings. *Lake Bluff IV*, 246 Wis. 2d 785, ¶ 1. Therefore, while not explicit, *Lake Bluff IV* extended *Goode*'s analysis to cases where relief is sought pursuant to Wis. Stat. § 62.23(8), the statute relied upon by the Town in the present case.

¶ 28. In sum, we agree with the court of appeals' reading of *Goode* and *Lake Bluff* that when a governmental body exercises its authority pursuant to either Wis. Stat. §§ 59.69(11) or 62.23(8) and seeks injunctive relief, the circuit court retains the power to deny the relief sought and the property owners can defend themselves in equity. *Winkelman II*, 264 Wis. 2d 264, ¶ 14. Thus, we determine that the circuit court erred in concluding that it had no such power.

V

¶ 29. Having clarified that circuit courts have the power to consider equitable arguments in enforcement actions for injunctive relief, we next address whether that power may be exercised here. The Town contends that, unlike the property owners in *Goode* and *Lake*

122

*Bluff,* the Winkelmans already had an opportunity to present their equitable arguments before the certiorari court and in fact did so. It warns that the decision of the court of appeals to remand in the case, "wreaks havoc on the orderly processes of judicial administration." The Town explains:

> The equity hearing ordered by the [c]ourt of [a]ppeals creates the extraordinary situation of one circuit court exercising appellate powers over another circuit court's decision. Not only does this additional review grant the equity court power over the previously entered certiorari decision, it denies finality to the certiorari court's decision and upsets the doctrines of issue and claim preclusion.

¶ 30. The difficulty we have with the Town's position is its premise that certiorari review is a proper forum for consideration of the equities. By its nature, certiorari review is limited in scope. Unless otherwise provided by statute, the traditional standards of common-law certiorari review apply. *Hanlon v. Town of Milton,* 2000 WI 61, ¶ 23, 235 Wis. 2d 597, 612 N.W.2d 44. These include determining (1) whether the board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its actions were arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question. *Id.* (citing *State ex rel. Ruthenberg v. Annuity & Pension Bd.,* 89 Wis. 2d 463, 472, 474, 278 N.W.2d 835 (1979)). Although the Town maintains that the third prong of certiorari review reflects the same criterion that is required for making decisions on equitable arguments, we are not persuaded.

¶ 31. In its decision, the court of appeals noted, "we find no authority, and counsel at oral argument was

unable to cite to any, that says that courts sit in equity in certiorari actions." *Winkelman II*, 264 Wis. 2d 264, ¶ 19. Like the court of appeals, we too have discovered no precedent that allows certiorari courts to sit in equity. Indeed, the Town acknowledges in its brief that, "Wisconsin Courts have developed no legal authority with regard to this issue." As a result, we agree with the court of appeals that, "[w]hile in certain circumstances a certiorari court has the authority to take additional evidence . . . simply allowing a court to add to the record does not mean that the court is then sitting in equity." *Id.* (citation omitted).

¶ 32. Despite the limitations of certiorari review, the court of appeals prohibited the Winkelmans from reasserting the argument previously rejected by the certiorari court concerning the contingency of their mortgage upon the rental income of the second residence. *Id.,* ¶ 20. It did so under the theory of issue preclusion. *Id.* In its brief, the Town maintains that, "issue preclusion should not have been applied in this instance. Rather, claim preclusion was the appropriate doctrine to involve so as to prevent continuing piecemeal attack on the variance." We examine each of these doctrines in turn.

■

¶ 33. Under claim preclusion, " 'a final judgment is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings.' " *Lindas v. Cady*, 183 Wis. 2d 547, 558, 515 N.W.2d 458 (1994) (quoting *DePratt v. West Bend Mutual Insurance Co.*, 113 Wis. 2d 306, 310, 334 N.W.2d 883 (1983)). The doctrine requires: (1) identity of the parties; (2) identity of the causes of action in the two suits; and (3) final judgment on the merits in a court of

competent jurisdiction. *Northern States Power Co. v. Bugher,* 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995).

¶ 34. Issue preclusion, by comparison, is a more narrow doctrine. It is designed to limit the relitigation of issues that have been actually litigated in a previous action. *Michele T. v. Crozier,* 173 Wis. 2d 681, 687, 495 N.W.2d 327 (1993). The modern approach to issue preclusion requires courts to conduct a "fundamental fairness" analysis. *Id.* at 689. For this analysis, courts may consider several factors in deciding whether issue preclusion is equitable in a particular case.[6]

---

[6] Courts may consider some or all of the following factors to protect the rights of all parties to a full and fair adjudication of all issues involved in the action:

(1) Could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment;

(2) Is the question one of law that involves two distinct claims or intervening contextual shifts in the law;

(3) Do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue;

(4) Have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or

(5) Are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Michelle T. v. Crozier,* 173 Wis. 2d 681, 688–89, 495 N.W.2d 327 (1993) (citing the Restatement (Second) of Judgments, "Exceptions to the General Rule of Issue Preclusion" sec. 28 at 273–74).

¶ 35. In the end, we reject the use of either doctrine in this case. Claim preclusion is inapplicable as there is no "identity of the causes of actions in the two suits." In the first action, the Winkelmans sought certiorari review to challenge the Town zoning board's decision to impose a raze condition on a variance. In the second, the Town brought suit to enforce that condition. Although there may have been some overlap in the arguments of the two cases, the claims themselves were separate and distinct.

¶ 36. Issue preclusion is also inappropriate for two of the reasons set forth in *Crozier.* First, we recognize that "significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation." *Id.* As noted above, certiorari review is limited in scope. The traditional criteria by which certiorari courts review a board's decision do not involve consideration of equitable arguments. The circuit court in an enforcement action for injunctive relief, by contrast, can consider all equitable issues.

¶ 37. Second, in general, property owners in the Winkelmans' position may have an "inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action." *Id.* The reason for this is that they have no way of knowing for certain at the certiorari review what relief the Town will be seeking. Here, there was over a three-year period between the initial certiorari review and enforcement action. Ultimately, the Town sought to enforce the razing condition of the variance. It could have, however, sought forfeitures, pursued alternative relief, or simply declined to pursue relief altogether. The Winkelmans should not have to prepare equitable defenses for all possible relief.

¶ 38. In sum, we conclude that the circuit court had subject matter jurisdiction to enter the orders in this action. Additionally, we agree with the court of appeals that the circuit court had the power to consider the Winkelmans' equitable arguments in the context of this enforcement action. Further, we determine that the circuit court may properly exercise that power here. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 39. DAVID T. PROSSER, J. *(concurring).* I join the majority opinion in the belief that it correctly applies the court's decision in *Forest County v. Goode,* 219 Wis. 2d 654, 579 N.W.2d 715 (1998). The opinion states that the circuit court may "consider all equitable issues" in a zoning enforcement action under Wis. Stat. § 62.23(8). Majority op., ¶ 37.

¶ 40. I write separately because the majority opinion implies that the decision in *Lake Bluff Housing Partners v. City of South Milwaukee,* 2001 WI App 150, 246 Wis. 2d 785, 632 N.W.2d 485 *(Lake Bluff IV),* which extended the principles of the *Goode* case to enforcement actions under a different statute, is copacetic. It is not, and it should have been reversed.

¶ 41. In *Lake Bluff IV,* the court of appeals concluded that the circuit court "properly engaged in the equitable analysis under *Goode. Its written decision addresses all the pertinent factors." Lake Bluff IV,* ¶ 29 (emphasis added). In fact, however, the circuit court determined that some equitable factors—that is, equitable factors that had been raised and rejected in prior legal proceedings—could *not* be considered de novo by

127

the court in an equity proceeding because the prior legal determinations were the law of the case. This determination by the circuit court in 2000, implicitly approved by the court of appeals in *Lake Bluff IV,* is plainly inconsistent with the holding and sound reasoning in this case.

¶ 42. This court declined to review *Lake Bluff IV* on January 31, 2002. My unpublished dissent to the denial of the petition for review is attached to this concurrence as Exhibit 1, so as to explain in detail my reservations about *Lake Bluff IV.*

¶ 43. For the foregoing reasons I concur.

## EXHIBIT 1

¶ 1. DAVID T. PROSSER, J. (*dissenting*). On June 6, 2000, the Circuit Court of Milwaukee County ordered Lake Bluff Housing Partners (Lake Bluff) to raze and remove two apartment buildings located on property overlooking Lake Michigan in the City of South Milwaukee. The two buildings contain 56 apartment units. As part of the court's judgment, Lake Bluff was ordered not to renew the leases of the 82 adults and 29 children, a number of whom are disabled, who were then living in these affordable-housing units, so that the two buildings could be torn down.

¶ 2. The circuit court acknowledged that its order would cost Lake Bluff the $4.2 million it had spent to construct the two buildings ($2.7 million of which was still owed on a mortgage), plus an additional $300,000 or more to raze the buildings and restore the land to a dust-free, erosion-free condition. It also acknowledged hardship and inconvenience to the tenants who would be displaced. Nonetheless, the court found that the equities favoring Lake Bluff were outweighed by the

equities favoring the City of South Milwaukee. It concluded that requiring compliance with the City's R-A zoning classification, which limited the site to single family residences, would vindicate municipal authority to adopt comprehensive zoning ordinances and produce "more open area (about double the current green space)" and "greater access to air and light for area residents." In its lengthy decision, the circuit court found that Lake Bluff did "not have clean hands," that good faith did "not weigh in Lake Bluff's favor," that Lake Bluff's economic predicament was "self-created," and that Lake Bluff had made a calculated business decision to construct the buildings in violation of the zoning ordinance and consequently assumed all risks of its decision. These findings contradicted previous findings by other courts. The circuit court concluded that it could not consider several factors that had been relied upon by these other courts.

¶ 3. On appeal, the court of appeals affirmed. *Lake Bluff Housing Partners v. City of South Milwaukee,* 2001 WI App 150, 246 Wis. 2d 785, 632 N.W.2d 485.

¶ 4. Lake Bluff now petitions this court for review, but its petition is denied. Because Lake Bluff's petition raises important legal issues for this court's consideration, and because the ultimate decision to raze two relatively new apartment buildings at enormous economic loss and great inconvenience is astounding in light of the entire circumstances of the case, I dissent from our determination not to grant review.

I

¶ 5. This dispute has lasted for nearly a decade and resulted in four published decisions from two separate cases. The first case led to *Lake Bluff Housing*

129

*Partners v. City of South Milwaukee,* 188 Wis. 2d 230, 525 N.W.2d 59 (Ct. App. 1994) (*Lake Bluff I*), reversed by *Lake Bluff Housing Partners v. City of South Milwaukee,* 197 Wis. 2d 157, 540 N.W.2d 189 (1995) (*Lake Bluff II*). The second case produced *Lake Bluff Housing Partners v. City of South Milwaukee,* 222 Wis. 2d 222, 588 N.W.2d 45 (Ct. App. 1998) (*Lake Bluff III*), and *Lake Bluff Housing Partners v. City of South Milwaukee,* 2001 WI App 150 (*Lake Bluff IV*), and is the litigation presently before this court. Since 1993 three different circuit judges have ruled on the dispute. This court resolved the first case but has not reviewed the legal issues in the second case.

## II

¶ 6. To understand the issues presented by the petition for review, one must understand the complete facts. The two apartment buildings ordered demolished are located on land that was zoned C-2 from 1965 until November 2, 1993. C-2 zoning permits multi-family development. Consistent with that zoning, other apartment complexes are situated in the immediate vicinity of the project.

¶ 7. In October 1992 Lake Bluff applied for a tax credit from the Wisconsin Housing and Economic Development Authority (WHEDA). Its intent was to construct a multi-family affordable- housing development on the land if it received the tax credit.

¶ 8. In December 1992 WHEDA awarded Lake Bluff a $266,903 site-specific credit and Lake Bluff then acquired the land for $294,000. Lake Bluff paid WHEDA a non-refundable fee of $16,314 to reserve the credit, understanding that the project had to be built and certificates of occupancy issued by December 31,

1994. Lake Bluff also had the property surveyed at a cost of $1150 and contracted with an architect to prepare project plans at a cost of $29,513. Prior to purchase of the land, Lake Bluff confirmed that the zoning was consistent with multi-family development.

¶ 9. In February 1993 Lake Bluff representatives met with the mayor, city administrator, building inspector, city engineer, and local alderperson of South Milwaukee to review initial plans for the project. Lake Bluff's initial plan was to build seven apartment buildings, each consisting of eight units. Over time, the plan evolved into a two-building project totaling 56 units. This evolution appears to have been influenced by changes required by the City. The City advised Lake Bluff that to obtain a building permit along the lake it would have to provide a bluff assessment establishing that the project would not cause bluff erosion for 100 years. The City also advised Lake Bluff that South Milwaukee parking requirements had changed and that Lake Bluff would have to modify its plans to meet the new requirements. Lake Bluff then modified its parking plans and commissioned a bluff erosion study at a cost of $4590.

¶ 10. At the February 1993 meeting, city officials reconfirmed that a multi-family project was a permitted use in that zone.

¶ 11. On April 28, 1993, a South Milwaukee resident, William J. Fox, III, sent a letter to a South Milwaukee alderman requesting that Lake Bluff's property be rezoned from C-2 to R-A for single-family unit development. On May 6, 1993, the City referred the Fox letter to its Plan Commission for recommendation and report. The Plan Commission considered Mr. Fox's request at a May 24, 1993 meeting and recommended to the Common Council that no building permits be issued

while the rezoning request was under consideration. Lake Bluff was not informed of these developments and did not learn that South Milwaukee was considering a moratorium on the issuance of building permits for this specific property until June 22, 1993, almost two months after receipt of the Fox letter. As a result, Lake Bluff did not have the opportunity to participate in the May meetings of the Plan Commission and Common Council.

¶ 12. On July 6, 1993, the Common Council adopted a resolution imposing a moratorium on the issuance of building permits—solely on Lake Bluff's property—during consideration of the request to rezone the property.[1]

---

[1] South Milwaukee's city attorney advised the Plan Commission that a moratorium on building permits for the property could be imposed by a resolution of the common council. *Lake Bluff Housing Partners v. City of South Milwaukee,* 188 Wis. 2d 230, 235–36, 525 N.W.2d 59 (Ct. App. 1994) (*Lake Bluff I*). At oral argument before the court of appeals, however, the city attorney advised the court of his doubts regarding the legality of the moratorium. He indicated that, in all likelihood, a moratorium enacted by ordinance would have been lawful but a moratorium by resolution was of dubious legality. *Id.* at 236 n.1. Likewise, in *Lake Bluff Housing Partners v. City of South Milwaukee,* 197 Wis. 2d 157, 163 n.2, 540 N.W.2d 189 (1995) (*Lake Bluff II*), this court noted that "counsel for defendant [City of South Milwaukee] stated that this moratorium was of questionable legality." However, the court went on to say that because "the moratorium was never challenged . . . we will accept it as valid for purposes of this review." *Id.* Lake Bluff insists now that it *did* challenge the legality of the moratorium. *See* Petition for Review at 15 n.3. In any event, this court accepted the moratorium as valid only for purposes of its review in the 1995 case.

¶ 13. On August 5, 1993, the Wisconsin Department of Industry, Labor and Human Relations approved Lake Bluff's architectural plans, entitling Lake Bluff to seek a footing and foundation permit from South Milwaukee. Obtaining this approval authorized Lake Bluff to begin construction of the buildings if it secured a building permit. That day, Lake Bluff submitted its application for a building permit to the City's building inspector, Michael Vesperman. The application was denied immediately because of the moratorium.

¶ 14. Circuit Judge John S. McCormick later found that following this denial, "Lake Bluff made several attempts to learn from city officials whether there were any deficiencies in its application" for the building permit or "whether the moratorium" against the property formed the sole basis for the denial. He further found that "[d]espite Lake Bluff's efforts to secure a review of its plans and specifications, South Milwaukee did not conduct a review and did not notify Lake Bluff of any deficiencies in its plans, specifications and application," even though the City normally processed such an application within one month of receipt.

¶ 15. On October 7, 1993, the City held a public hearing on the request to change the zoning of the property from C-2 to R-A. Then, on November 2, 1993, the Common Council passed an ordinance changing the zoning classification. This ordinance, which was intended to preclude multi-family development, applied only to Lake Bluff's property.

¶ 16. On March 10, 1994, Lake Bluff initiated suit against South Milwaukee and its building inspector. The suit sought a writ of mandamus directing the building inspector to issue a building permit. Only after Lake Bluff commenced this suit did South Milwaukee conduct a comprehensive review of Lake Bluff's appli-

cation. In its response, the City identified a number of specific deficiencies in the application, all of which were corrected in Lake Bluff's subsequent construction.

¶ 17. On April 29, 1994, Judge McCormick made an oral ruling and then issued a writ of mandamus as requested by Lake Bluff. In his written decision, Judge McCormick stated that Lake Bluff acquired vested rights before South Milwaukee's enactment of the moratorium prohibiting the issuance of building permits at the property. He concluded that "South Milwaukee's actions in denying Lake Bluff's application for a building permit were arbitrary, capricious and invalid." He also determined that South Milwaukee had knowledge of Lake Bluff's proposed development and of Lake Bluff's expenditure of significant sums of money toward accomplishing its development, before the City imposed the moratorium and rezoned the property.

¶ 18. The City appealed. While pursuing its appeal, the City did not seek a stay under Wis. Stat. § 808.07 of either the writ of mandamus or the judgment. Circuit Judge Raymond E. Gieringer later found that, "The City knew that Lake Bluff had to begin construction immediately upon its receipt of the writ of mandamus" because the two buildings had to be completed by December 31, 1994, in order for Lake Bluff to preserve the low-income-housing tax credit it had been awarded by WHEDA. Judge Gieringer reasoned that by appealing but not posting bond and seeking a stay in judgment, the City was attempting to protect itself from having to pay a large damage award to Lake Bluff in the event that the writ was sustained.

¶ 19. It was in these circumstances that Lake Bluff made the decision to begin construction. On October 4, 1994, in *Lake Bluff I,* the court of appeals affirmed the circuit court's writ. 188 Wis. 2d 230.

However, the City's appeal undermined investor confidence in the credit, forcing Lake Bluff to surrender it back to WHEDA.[2]

¶ 20. After losing in the court of appeals, the City petitioned this court for review. This court granted review on January 17, 1995.

¶ 21. On November 20, 1995, eleven months after the court of appeals ruling, the supreme court reversed. *Lake Bluff II,* 197 Wis. 2d 157. This decision came 19 months after Judge McCormick had issued the writ of mandamus and several months after the construction

---

[2] Two appellate decisions have stated otherwise. In *Lake Bluff Housing Partners v. City of South Milwaukee,* 222 Wis. 2d 222, 226, 588 N.W.2d 45 (Ct. App. 1998) (*Lake Bluff III*), the court said that "Lake Bluff was able to take advantage of the tax credits allocated for the development." In *Lake Bluff Housing Partners v. City of South Milwaukee,* 2001 WI App 150, ¶ 24, 246 Wis. 2d 758, 632 N.W.2d 485 (*Lake Bluff IV*), the court said that "Lake Bluff's contention that construction had to begin because the project needed to be completed by December 1994 was not correct. Lake Bluff failed to meet the deadline, *and still secured tax credits for the project*" (emphasis added).

In the period between these two decisions, Judge Francis T. Wasielewski reported that Lake Bluff had to give up the credits before using them. The court wrote:

Michael Lerner testified that in 1992, Lake Bluff was awarded $2.6 million in credits for this project over a 10 year period. To preserve its right to the credits, it had to build the project and obtain certificates of occupancy by December 31, 1994.

This deadline was not met. Occupancy permits for the 2 buildings were not issued until August and September, 1995. *Some time in the late summer or early fall of 1994, Lake Bluff surrendered its credits to WHEDA.* Mr. Lerner said that the continuing litigation over the legality of the Lake Bluff Project dampened the enthusiasm of potential bidders. . . . The continuing litigation "put a cloud over the financial viability of the tax credits" (emphasis added).

had been completed. This court concluded that Lake Bluff's rights did not "vest" because it did not obtain a building permit or submit a completely error-free application for a building permit before the City succeeded in rezoning the site. *Id.* at 182. The court concluded:

> The theory behind the vested rights doctrine is that a builder is proceeding on the basis of a reasonable expectation. . . . Vested rights should only be obtained on the basis of strict and complete compliance with zoning and building code requirements, because a builder's proceeding in violation of applicable requirements is not reasonable.
>
> In this case, it is undisputed that Lake Bluff never submitted an application for a building permit which complied with either the new single-family zoning or with the former C-2 zoning.

*Id.* at 175.

¶ 22. In *Lake Bluff II,* this court determined that the circuit court should not have granted the writ of mandamus ordering the City to issue a building permit. It ruled that for purposes of showing a "clear, specific legal right which is free from substantial doubt," as required in a mandamus action, neither Lake Bluff nor the court could rely on equitable principles. Therefore, it reversed, directing that the writ be quashed. *Id.* at 182.

¶ 23. Significantly, this court did not address the consequences of its decision—it did not ratify a particular remedy for the City.[3] Rather, it put the City in a

---

[3] When Circuit Judge Raymond E. Gieringer considered this dispute, he found as fact that: "In its decision, the Supreme Court remanded this case to the circuit court 'with instructions

position to seek either demolition of the two buildings or some other remedy, in circuit court under Wis. Stat. § 62.23(8).

¶ 24. The second case was commenced by Lake Bluff in an attempt to block the City from trying to remove the buildings. Although Lake Bluff initially obtained a declaratory judgment estopping the City from revoking its building and occupancy permits, its judgment was reversed in *Lake Bluff III,* 222 Wis. 2d 222. Thereafter, Circuit Judge Francis T. Wasielewski issued the order to raze the buildings, and his order was affirmed by the court of appeals in *Lake Bluff IV,* 2001 WI App 150.

### III

¶ 25. On July 1, 1998, this court released its decision in *Forest County v. Goode,* 219 Wis. 2d 654, 579 N.W.2d 715 (1998). The issue in *Goode* was whether a circuit court retains equitable power to deny injunctive relief after a zoning ordinance violation has been proven. This court concluded that a circuit court retains its equitable power to deny injunctive relief to enforce a zoning ordinance.

¶ 26. The *Goode* decision came after the decisions in *Lake Bluff I* and *Lake Bluff II,* but shortly before the decision in *Lake Bluff III.* Hence, in *Lake Bluff III,* although the court of appeals reversed Judge Gieringer's declaratory judgment, it remanded the case for consideration of *Goode.* The court of appeals said:

Under *Forest County v. Goode,* the trial court must, apparently, still balance the competing equities in de-

to quash the writ.' The Supreme Court made no Order with regard to the Buildings, the building permits or the occupancy permits."

137

termining whether an abatement order under § 62.23(8), stats., is required. . . .

We remand this matter to the trial court to consider whether *Goode's* analysis of § 59.69(11), stats., applies here, and, if so, whether Lake Bluff can marshal a sufficient showing that "there are compelling equitable reasons" why the trial court should not issue an order of abatement.

*Lake Bluff III,* 222 Wis. 2d at 231–32 (citations omitted).

¶ 27. The present petition for review raises critical *legal* questions about the circuit court's application of *Goode* in the unusual circumstances of this case. In *Goode,* this court provided the following guidance:

[T]he circuit court, sitting in equity, should weigh heavily the factors considered by boards of adjustment in determining unnecessary hardship, as well as traditional equitable considerations. Equitable defenses, such as laches, estoppel, or unclean hands should also be weighed in appropriate cases.

. . . .

In deciding whether to deny a request for an injunction based upon a . . . zoning ordinance violation, the circuit court should take evidence and weigh any applicable equitable considerations including the substantial interest of the citizens of Wisconsin in the vigilant protection of the state's shorelands, the extent of the violation, the good faith of other parties, any available equitable defenses such as laches, estoppel or unclean hands, the degree of hardship compliance will create, and the role, if any, the government played in contributing to the violation. This list is not meant to be exhaustive but only to illustrate the importance of the circuit court's consideration of the substantial public interest in enforcing its . . . zoning ordinances.

Once a violation is established, a circuit court should grant the injunction except, in those rare cases, when it concludes, after examining the totality of the circumstances, there are compelling equitable reasons why the court should deny the request for an injunction. . . . [T]he circuit court also possesses equitable power to fashion an injunction that does justice. If the court is inclined to deny an injunction, it should first explore alternatives to the requested full injunction to determine whether a more equitably crafted injunction might be appropriate.

*Goode,* 219 Wis. 2d at 681–82, 684.

¶ 28. The circuit court responded to this directive by concluding that it was constrained *not* to consider certain equitable factors except as they had been considered in deciding legal questions in previous appellate decisions. The court said:

Insofar as the "totality of the circumstances" includes claims that have already been raised and decided by the appellate courts in this case, those decisions are part of the "totality of the circumstances." For instance, it has already been determined by the Court of Appeals that estoppel does not prevent South Milwaukee from enforcing the provisions of sec. 66.23(8), Stats. *See Lake Bluff Housing,* 222 Wis. 2d at 229. Furthermore, Lake Bluff's claim that equitable considerations require nullification of the Defendant's change in zoning from C-2 (apartments) to R-A (single family) was rejected by the Supreme Court. *See Lake Bluff Housing,* 197 Wis. 2d at 179. Likewise, the Supreme Court determined that Lake Bluff had no vested rights in the issuance of building permits under the R-A or C-2 zoning. *Lake Bluff Housing,* 197 Wis. 2d at 175. Moreover, South Milwaukee's building moratorium was found to be legal for the purposes of these proceedings. *Lake Bluff Housing Partners,* 197 Wis. 2d at 163. These determinations, and others mentioned below, have become "the law of

139

the case which must be followed in all subsequent proceedings in the trial court or on later appeal." *Univest Corp. v. General Split Corp.*, 148 Wis. 2d 29, 38 (1989). The determinations of the appellate courts in this matter will be considered a part of the "totality of the circumstances" and the *Goode* inquiry will be made within the context of these decisions.

¶ 29. The petitioner in this case now asks the court to clarify the effect of prior appellate court *legal* holdings on future equitable analyses, and to determine the implications of the "law of the case doctrine" on future equitable evaluations. These are important questions because they will determine both the scope of the circuit court's independent fact-finding in equity and whether *Forest County v. Goode* has potency in remand situations. They probe what this court intended in *Goode* and whether the circuit court interpreted *Goode* too narrowly. The petition argues, persuasively, that the circuit court's legal interpretation of *Goode* was simply incorrect as a matter of law, impairing the circuit court's exercise of discretion.

¶ 30. At the outset of this dispute, Circuit Judge McCormick found that Lake Bluff relied on existing zoning when it purchased the property, advised the City of its intentions, expended additional money after it had informed the City of its plans, and then was not timely alerted when the City unexpectedly began to change its position. Judge McCormick found that the City did not identify the deficiencies in Lake Bluff's application until after Lake Bluff filed its first lawsuit. Thus, because of the City's actions, Lake Bluff was effectively prevented from meeting the test for vested rights this court established in *Lake Bluff II*. Judge McCormick concluded that the City's actions in denying

Lake Bluff's application for a building permit were "arbitrary, capricious and invalid."

¶ 31. Judge Wasielewski determined that these equitable factors simply could not be considered de novo in his determination of whether or not to issue the raze order. The court of appeals affirmed in a published decision, ruling that "[b]ecause the trial court balanced all of the equitable considerations under *Forest County v. Goode,* there was no erroneous exercise of discretion." *Lake Bluff IV,* 2001 WI App 150 at ¶ 1 (citation omitted). These decisions have ramifications for litigants far beyond this dispute. They will also affect the procedures and attitude of local officials as they consider zoning matters.

¶ 32. In his dissent in *Lake Bluff I,* Judge Ralph Adam Fine wrote eloquently that: "The law must be sufficiently predictable so that men and women can conduct their business with the assurance that the rules are not going to change in mid-stream." 188 Wis. 2d at 259. Perhaps, someday, someone will explain why this just maxim does not apply to Lake Bluff.